TROY LAW, PLLC
John Troy (JT 0481)
41-25 Kissena Boulevard Suite 119
Flushing, NY 11355
Tel: (718) 762-1324
*Attorney for the Plaintiffs, proposed FLSA Collective and potential Rule 23 Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT COURT OF NEW YORK**

**Case No. 19-cv-07702**

----------------------------------------------------------------x

HUER HUANG,
LIANQIN LU,
GLORIA PEREZ MENDEZ,
CLARA FLORES,
REYES PEREZ GUERRERO,
HUI ZHEN HUANG,
JUAN LI, and
HAI HUA ZHAI,
*on their own behalf and on behalf of others similarly situated*                    Plaintiffs,

v.

SHANGHAI CITY CORP
    d/b/a Joe's Shanghai;
SHANGHAI DUPLICATE CORP
    d/b/a Joe's Shanghai;
EAST BROTHER CORP
    d/b/a Joe's Shanghai; and
SHANGHAI ORIGINAL INC.
    d/b/a Joe's Shanghai;
KIU SANG SI
    a/k/a Joseph Si
    a/k/a Joe Si,
YIU FAI FONG,
TUN YEE LAM
    a/k/a Peter Lam,
GUI BING SHI,
SOLOMON C. LIOU,
MIMI SI,
WILLIAM KO,
LILLIAN LIOU,
CHENG KUENG LIU,
YUN CAI,
JOHN ZHANG, and
TERRY
               Defendants.

**29 U.S.C. § 216(b)**
**COLLECTIVE ACTION &**
**FED. R. CIV. P. 23 CLASS**
**ACTION**

**COMPLAINT**

----------------------------------------------------------------x

Plaintiffs HUER HUANG, LIANQIN LU, GLORIA PEREZ MENDEZ, CLARA FLORES, REYES PEREZ GUERRERO, HUI ZHEN HUANG, JUAN LI, and HAI HUA ZHAI (hereinafter referred to as Plaintiffs), on behalf of themselves and others similarly situated, by and through their attorney, Troy Law, PLLC, hereby bring this complaint against Defendants SHANGHAI CITY CORP d/b/a Joe's Shanghai; SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai; EAST BROTHER CORP d/b/a Joe's Shanghai; ; and SHANGHAI ORIGINAL INC. d/b/a Joe's Shanghai; KIU SANG SI a/k/a Joseph Si a/k/a Joe Si, YIU FAI FONG, TUN YEE LAM a/k/a Peter Lam, GUI BING SHI, SOLOMON C. LIOU, MIMI SI, WILLIAM KO, LILLIAN LIOU, CHENG KUENG LIU, YUN CAI, JOHN ZHANG, and TERRY HO, and allege as follows:

## **INTRODUCTION**

1.    This action is brought by the Plaintiffs HUER HUANG, LIANQIN LU, GLORIA PEREZ MENDEZ, CLARA FLORES, REYES PEREZ GUERRERO, HUI ZHEN HUANG, JUAN LI, and HAI HUA ZHAI, on behalf of themselves as well as other employees similarly situated, against the Defendants for alleged violations of the Fair Labor Standards Act, (FLSA) 29 U.S.C. § 201 *et seq.* and New York Labor Law (NYLL), arising from Defendants' various willfully and unlawful employment policies, patterns and practices.

2.    Upon information and belief, Defendants have willfully and intentionally committed widespread violations of the FLSA and NYLL by engaging in pattern and practice of failing to pay its employees, including Plaintiffs, minimum wage for each hour worked and overtime compensation for all hours worked over forty (40) each workweek.

3.    Plaintiffs HUER HUANG, LIANQIN LU, GLORIA PEREZ MENDEZ, CLARA FLORES, REYES PEREZ GUERRERO allege pursuant to the FLSA, that they are

entitled to recover from the Defendants: (1) unpaid minimum wage and unpaid overtime wages, (2) liquidated damages, (3) prejudgment and post-judgement interest; and or (4) attorney's fees and cost.

4.      Plaintiffs further allege pursuant to NYLL § 650 et seq. and 12 New York Codes, Rules and Regulations § 146 (NYCRR) that they are entitled to recover from the Defendants: (1) unpaid minimum wage compensation and unpaid overtime compensation, (2) unpaid spread-of-hours premium, (3) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday, (4) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that accurately and truthfully lists employee's hours along with the employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day, (5) liquidated damages equal to the sum of unpaid minimum wage, unpaid "spread of hours" premium, unpaid overtime in the amount of twenty five percent under NYLL § 190 et seq., § 650 et seq., and one hundred percent after April 9, 2011 under NY Wage Theft Prevention Act, (6) 9% simple prejudgment interest provided by NYLL, (7) post-judgment interest, and (8) attorney's fees and costs.

5.      Plaintiff HAIHUA ZHAI further alleges that he is entitled to recover from the Defendants: out of pocket expenses to delivery experts on the road.

6.      Plaintiff HAIHUA ZHAI further alleges pursuant to NYLL § 650 et seq. and 12 New York Codes, Rules and Regulations § 146 (NYCRR) that he is entitled to recover from the Defendants out of pocket expenses to delivery experts on the road.

## JURISDICTION AND VENUE

7.     This Court has original federal question jurisdiction over this controversy under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331, and has supplemental jurisdiction over the NYLL claims pursuant to 28 U.S.C. § 1367(a).

8.     Venue is proper in the Southern District Court of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PROCEDURAL HISTORY AND TIMELINESS

9.     On June 07, 2017, the District Court in the Eastern District of New Court in *Jianmin Jin* et al. v. *Shanghai Original, Inc.* et al. conditionally certified a collective action pursuant to § 216(b) of the FLSA.

10.     Plaintiffs HUER HUANG, LIANQIN LU, HUI ZHEN HUANG, JUAN LI and HAIHUA ZHAI opted into *Jianmin Jin* et al. v. *Shanghai Original, Inc.* et al. to pursue FLSA claims on August 21, 2017.

11.     On April 02, 2018, the collective which had been conditionally certified in *Jianmin Jin* et al. v. *Shanghai Original, Inc.* et al. was decertified without prejudice to the opt-in plaintiffs filing new actions on their own behalf.

12.     HUER HUANG, LIANQIN LU, HUI ZHEN HUANG, JUAN LI and HAIHUA ZHAI spent 225 days pursuing their FLSA claims as part of the collective in *Jianmin Jin* et al. v. *Shanghai Original, Inc.* et al.

13.     The limitations period of HUER HUANG, LIANQIN LU, HUI ZHEN HUANG, JUAN LI was tolled throughout their time pursuing their claims as part of the collective in *Jianmin Jin* et al. v. *Shanghai Original, Inc.* et al.

14.     HUER HUANG, LIANQIN LU, HUI ZHEN HUANG, JUAN LI allege willful

violations of the FLSA.

15.    Accordingly, claims of HUER HUANG, LIANQIN LU, HUI ZHEN HUANG, JUAN LI and HAIHUA ZHAI under the FLSA arising after 3 years and 225 days before the filing of this Complaint are not time-barred.

16.    Plaintiffs GLORIA PEREZ MENDEZ, CLARA FLORES, REYES PEREZ GUERRERO filed their Consent to Become Party Plaintiff in *Jian Ying Lin* et al. v. *Shanghai Original* et al. to pursue FLSA claims on June 27, 2018.

17.    On November 06, 2018, the Judge dismissed the action and the claims of GLORIA PEREZ MENDEZ, CLARA FLORES, REYES PEREZ GUERRERO without prejudice.

18.    GLORIA PEREZ MENDEZ, CLARA FLORES, REYES PEREZ GUERRERO spent 153 days pursuing their FLSA claims as part of the collective in *Jian Ying Lin* et al. v. *Shanghai Original* et al.

19.    The limitations period of GLORIA PEREZ MENDEZ, CLARA FLORES, REYES PEREZ GUERRERO was tolled throughout their time pursuing their claims as party plaintiffs in *Jian Ying Lin* et al. v. *Shanghai Original* et al.

20.    GLORIA PEREZ MENDEZ, CLARA FLORES, REYES PEREZ GUERRERO allege willful violations of the FLSA.

21.    Accordingly, claims of GLORIA PEREZ MENDEZ, CLARA FLORES, REYES PEREZ GUERRERO under the FLSA arising after 3 years and 153 days before the filing of this Complaint are not time-barred.

## **PLAINTIFFS**

22.    From on or about August 12, 2008 to August 11, 2016, Plaintiff HUER

HUANG was employed by Defendants to work as a meat and miscellaneous worker at 24 West 56th Street, New York NY 10019.

23.     From on or about December 29, 2008 to February 12, 2015, Plaintiff LIANQIN LU was employed by Defendants to work as a packer at 24 West 56th Street, New York NY 10019.

24. From on or about March 15, 2016 to March 31, 2017, Plaintiff GLORIA PEREZ MENDEZ was employed by Defendants to work as a sorter and miscellaneous worker at 24 West 56th Street, New York NY 10019.

25. From on or about May 31, 2012 to September 30, 2016, Plaintiff CLARA FLORES was employed by Defendants to work as a dishwasher at 24 West 56th Street, New York NY 10019.

26. From on or about February 01, 2008 to January 15, 2017, Plaintiff REYES PEREZ GUERRERO was employed by Defendants to work as a dishwasher at 24 West 56th Street, New York NY 10019.

27. From on or about October 01, 2012 to April 15, 2015, Plaintiff HUI ZHEN HUANG was employed by Defendants to work as a vegetable cutter at 24 West 56th Street, New York NY 10019.

28. From on or about October 01, 2012 to May 01, 2014, Plaintiff JUAN LI was employed by Defendants to work as a packer at 24 West 56th Street, New York NY 10019.

29. From on or about November 25, 2013 to February 24, 2015, Plaintiff HAIHUA ZHAI a/k/a Bin Xu was employed by Defendants to work as a delivery man at 24 West 56th Street, New York NY 10019.

## **DEFENDANTS**

*Corporate Defendants*

30.     Defendant SHANGHAI CITY CORP d/b/a Joe's Shanghai is a domestic business corporation organized under the laws of the State of New York with a principal address at 24 W 56th Street, New York, NY 10019.

31.     SHANGHAI CITY CORP d/b/a Joe's Shanghai is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000) per year.

32.     SHANGHAI CITY CORP d/b/a Joe's Shanghai purchased and handled goods moved in interstate commerce.

33.     Defendant SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai is a domestic business corporation organized under the laws of the State of New York with a principal address at 9 Pell Street, New York, NY 10013.

34.     SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000) per year.

35.     SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai purchased and handled goods moved in interstate commerce.

36.     Defendant EAST BROTHER CORP d/b/a Joe's Shanghai is a domestic business corporation organized under the laws of the State of New York with a principal address at 136-21 37th Avenue, Flushing, NY 11354.

37.     EAST BROTHER CORP d/b/a Joe's Shanghai is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000) per year.

38.     EAST BROTHER CORP d/b/a Joe's Shanghai purchased and handled goods

moved in interstate commerce.

39.    Defendant SHANGHAI ORIGINAL INC. d/b/a Joe's Shanghai is a domestic business corporation organized under the laws of the State of New York with a principal address at 136-21 37th Avenue, Flushing, NY 11354.

40.    SHANGHAI ORIGINAL INC. d/b/a Joe's Shanghai is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000) per year.

41.    SHANGHAI ORIGINAL INC. d/b/a Joe's Shanghai purchased and handled goods moved in interstate commerce.

### *Owner/Operator Defendants*

42.    The Individual Defendants are officers, directors, managers and/or majority shareholders or owners of the Corporate Defendant and being among the ten largest shareholders and/or LLC members, are individually responsible for unpaid wages under the New York Business Corporation Law and Limited Liability Company Law. NYBSC § 630(a), NYLLC § 609(c).

43.    KIU SANG SI a/k/a Joseph Si a/k/a Joe Si known as "Founder" of Joe's Shanghai Group of Restaurants and "Head Chef" to Plaintiff and 50% shareholder, officer, director and Proces of Service for SHANGHAI CITY CORP d/b/a Joe's Shanghai; 50% shareholder, officer, director and New York Alcoholic Beverage Control principal of SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai; CEO of SHANGHAI ORIGINAL INC. d/b/a Joe's Shanghai, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at SHANGHAI ORIGINAL, INC.

d/b/a Joe's Shanghai, EAST BROTHER CORP. d/b/a Joe's Shanghai, SHANGHAI CITY

CORP d/b/a Joe's Shanghai, SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai.

44.    KIU SANG SI a/k/a Joseph Si a/k/a Joe Si acted intentionally and maliciously

and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated

thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and

severally liable with SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai, EAST BROTHER

CORP. d/b/a Joe's Shanghai, SHANGHAI CITY CORP d/b/a Joe's Shanghai, SHANGHAI

DUPLICATE CORP d/b/a Joe's Shanghai.

45.    YIU FAI FONG known as "Manager" of the Dining Room at SHANGHAI

ORIGINAL INC. d/b/a Joe's Shanghai to Plaintiff and 33.33% shareholder, officer, and

director of SHANGHAI ORIGINAL INC. d/b/a Joe's Shanghai; 33.33% shareholder, officer,

director, and New York Alcoholic Beverage Control principal of EAST BROTHER CORP

d/b/a Joe's Shanghai, (1) had the power to hire and fire employees, (2) supervised and

controlled employee work schedules or conditions of employment, (3) determined the rate and

method of payment, and (4) maintained employee records at SHANGHAI ORIGINAL, INC.

d/b/a Joe's Shanghai, EAST BROTHER CORP. d/b/a Joe's Shanghai, SHANGHAI CITY

CORP d/b/a Joe's Shanghai, SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai.

46.    YIU FAI FONG acted intentionally and maliciously and is an employer

pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. §

791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with

SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai, EAST BROTHER CORP. d/b/a Joe's

Shanghai, SHANGHAI CITY CORP d/b/a Joe's Shanghai, SHANGHAI DUPLICATE

CORP d/b/a Joe's Shanghai.

47.     TUN YEE LAM a/k/a Peter Lam and 66.67% shareholder, officer, and director of SHANGHAI ORIGINAL INC. d/b/a Joe's Shanghai; 66.67% shareholder, officer, and director of EAST BROTHER CORP d/b/a Joe's Shanghai, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai, EAST BROTHER CORP. d/b/a Joe's Shanghai, SHANGHAI CITY CORP d/b/a Joe's Shanghai, SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai.

48.     TUN YEE LAM a/k/a Peter Lam acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai, EAST BROTHER CORP. d/b/a Joe's Shanghai, SHANGHAI CITY CORP d/b/a Joe's Shanghai, SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai.

49.     GUI BING SHI known as "Kitchen Manager" at SHANGHAI ORIGINAL INC. d/b/a Joe's Shanghai to Plaintiff, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai, EAST BROTHER CORP. d/b/a Joe's Shanghai, SHANGHAI CITY CORP d/b/a Joe's Shanghai, SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai.

50.     GUI BING SHI acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. §

791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai, EAST BROTHER CORP. d/b/a Joe's Shanghai, SHANGHAI CITY CORP d/b/a Joe's Shanghai, SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai.

51.     SOLOMON C. LIOU and 50% shareholder, officer, and director for SHANGHAI CITY CORP d/b/a Joe's Shanghai, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai, EAST BROTHER CORP. d/b/a Joe's Shanghai, SHANGHAI CITY CORP d/b/a Joe's Shanghai, SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai.

52.     SOLOMON C. LIOU acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai, EAST BROTHER CORP. d/b/a Joe's Shanghai, SHANGHAI CITY CORP d/b/a Joe's Shanghai, SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai.

53.     MIMI SI and New York Division of Alcoholic Beverage Control Principal for SHANGHAI CITY CORP d/b/a Joe's Shanghai, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai, EAST BROTHER CORP. d/b/a Joe's Shanghai, SHANGHAI CITY CORP d/b/a Joe's Shanghai, SHANGHAI DUPLICATE

CORP d/b/a Joe's Shanghai.

54.     MIMI SI acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai, EAST BROTHER CORP. d/b/a Joe's Shanghai, SHANGHAI CITY CORP d/b/a Joe's Shanghai, SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai.

55.     WILLIAM KO known as Kitchen and Dining Room Manager at SHANGHAI CITY CORP d/b/a Joe's Shanghai to Plaintiff, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai, EAST BROTHER CORP. d/b/a Joe's Shanghai, SHANGHAI CITY CORP d/b/a Joe's Shanghai, SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai.

56.     WILLIAM KO acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai, EAST BROTHER CORP. d/b/a Joe's Shanghai, SHANGHAI CITY CORP d/b/a Joe's Shanghai, SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai.

57.     LILLIAN LIOU and 25% shareholder, officer, and director of SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3)

determined the rate and method of payment, and (4) maintained employee records at SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai, EAST BROTHER CORP. d/b/a Joe's Shanghai, SHANGHAI CITY CORP d/b/a Joe's Shanghai, SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai.

58.     LILLIAN LIOU acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai, EAST BROTHER CORP. d/b/a Joe's Shanghai, SHANGHAI CITY CORP d/b/a Joe's Shanghai, SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai.

59.     CHEUNG KUENG LIU and 25% shareholder, officer, and director of SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai, EAST BROTHER CORP. d/b/a Joe's Shanghai, SHANGHAI CITY CORP d/b/a Joe's Shanghai, SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai.

60.     CHEUNG KUENG LIU acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai, EAST BROTHER CORP. d/b/a Joe's Shanghai, SHANGHAI CITY CORP d/b/a Joe's Shanghai, SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai.

61.    YUN CAI known as Kitchen Manager at SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai to Plaintiff, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai, EAST BROTHER CORP. d/b/a Joe's Shanghai, SHANGHAI CITY CORP d/b/a Joe's Shanghai, SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai.

62.    YUN CAI acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai, EAST BROTHER CORP. d/b/a Joe's Shanghai, SHANGHAI CITY CORP d/b/a Joe's Shanghai, SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai.

63.    JOHN ZHANG known as Kitchen Manager at SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai to Plaintiff, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai, EAST BROTHER CORP. d/b/a Joe's Shanghai, SHANGHAI CITY CORP d/b/a Joe's Shanghai, SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai.

64.    JOHN ZHANG acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai, EAST BROTHER CORP. d/b/a Joe's

Shanghai, SHANGHAI CITY CORP d/b/a Joe's Shanghai, SHANGHAI DUPLICATE

CORP d/b/a Joe's Shanghai.

65.    TERRY HO and Officer for SHANGHAI DUPLICATE CORP d/b/a Joe's

Shanghai, (1) had the power to hire and fire employees, (2) supervised and controlled

employee work schedules or conditions of employment, (3) determined the rate and method

of payment, and (4) maintained employee records at SHANGHAI ORIGINAL, INC. d/b/a

Joe's Shanghai, EAST BROTHER CORP. d/b/a Joe's Shanghai, SHANGHAI CITY CORP

d/b/a Joe's Shanghai, SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai.

66.    TERRY HO acted intentionally and maliciously and is an employer pursuant to

FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL

§ 2 and the regulations thereunder, and is jointly and severally liable with SHANGHAI

ORIGINAL, INC. d/b/a Joe's Shanghai, EAST BROTHER CORP. d/b/a Joe's Shanghai,

SHANGHAI CITY CORP d/b/a Joe's Shanghai, SHANGHAI DUPLICATE CORP d/b/a

Joe's Shanghai.

## STATEMENT OF FACTS

### Defendants Constitute an Enterprise

67.    At all times relevant herein, corporate defendants, all of which do business as

Joe's Shanghai, were and continue to be, a single and joint employer with a high degree of

interrelated and unified operation, centralized control of labor relations, common ownership,

common control, common management, common website, common business purposes and

interrelated business goals.

68.    Joe's Shanghai shares a single website, at

http://www.joeshanghairestaurants.com/, which not only lists the three restaurants, their

locations, and their menus, but in its "FORMAL DECLARATION" on its home page says that "Our company so far ONLY has three branches in New York:

      a.  "First Branch is located in Flushing (136-21 37th Avenue, Flushing, NY 11354)

      b.  "Second Branch is located in Chinatown (9 Pell Street, New York, NY 10013)

      c.  "Third Branch is located at Midtown (24 W. 56th Street, New York, NY 10019)."(See Exhibit 07).

69.    Furthermore, Joe's Shanghai is owned and controlled by the same Owner/Operator Defendants, including KIU SANG SI a/k/a Joe Si, who opened each of the three Joe Shanghai locations of the Joe Shanghai "Company" (See Exhibit 09), YIU FAI FONG, TUN YEE LAM a/k/a Peter Lam, SOLOMON C LIOU, LILLIAN LIOU, and CHENG KUENG LIU, all of whom are owners, officers, and directors of more than one "Joe's Shanghai" corporation.

70. Joe's Shanghai transferred employees, including Plaintiffs, between locations.

## **Wage and Hour Claims**

71.    There are at least 200 employees at the Joe's Shanghai Restaurants.

72.    Defendants committed the following alleged acts knowingly, intentionally and willfully against the Plaintiffs, the FLSA Collective Plaintiffs, and the Class.

73.    Pursuant to NYCRR Part 146-2.2 and 29 USC § 203(m), an employer cannot take credit towards the basic minimum wage if a service employee or food service worker has not received notification of the tip credit.

74.    At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs and similarly situated employees at least the New York minimum wage for each hour worked.

75.    At all relevant times, Defendants knowingly and willfully failed to pay

Plaintiffs their lawful overtime compensation of one and one-half times (1.5x) their regular rate of pay for all hours worked over forty (40) in a given workweek.

76.    While employed by Defendants, Plaintiffs were not exempt under federal and state laws requiring employers to pay employees overtime.

77.    Defendants failed to keep full and accurate records of Plaintiffs' hours and wages.

78.    Upon information and belief, Defendants failed to keep full and accurate records in order to mitigate liability for their wage violations. Defendants never furnished any notice of their use of tip credit.

79.    At all relevant times, Defendants knowingly and willfully failed to provide Plaintiffs and similarly situated employees with Time of Hire Notice reflecting true rates of pay and payday as well as paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day.

80.    Defendants knew that the nonpayment of overtime pay and New York's "spread of hours" premium for every day in which Plaintiffs worked over ten (10) hours would financially injure Plaintiffs and similarly situated employees and violate state and federal laws.

81.    Defendants did not post the required New York State Department of Labor posters regarding minimum wage pay rates, overtime pay, tip credit, and pay day.

***Plaintiff HUER HUANG***

82.    From on or about August 12, 2008 to August 11, 2016, Plaintiff HUER

HUANG was employed by Defendants to work as a meat and miscellaneous worker at 24 West 56th Street, New York NY 10019.

83.    From on or about August 12, 2008 to December 31, 2011, Plaintiff HUER HUANG's regular work schedule ran from

    a.  10:00 to 22:00 for twelve (12) hours a day on Monday, Tuesday, Wednesday, Thursday, Friday for five (5) days a week and sixty (60) hours; and

    b.  11:00 to 22:00 for eleven (11) hours on Saturday for one (1) day a week and eleven (11) hours.

84.    From on or about August 12, 2008 to December 31, 2011, Plaintiff HUER HUANG had three meal breaks, lasting between ten (10) and fifteen (15) minutes each, a day on Monday, Tuesday, Wednesday, Thursday, Friday, and Saturday or Sunday for six (6) days a week and four (4) hours and thirty (30) minutes,

85.    Thus, from on or about August 12, 2008 to December 31, 2011, Plaintiff HUER HUANG worked an average of sixty-six (66) hours and thirty (30) minutes a week.

86.    From on or about January 01, 2012 to December 31, 2014, Plaintiff HUER HUANG's regular work schedule ran from

    a.  10:00 to 22:00 for twelve (12) hours a day on Monday, Tuesday, Wednesday, Thursday, and Friday for five (5) days a week and sixty (60) hours; and

    b.  11:00 to 22:00 for eleven (11) hours on either Saturday or Sunday for one (1) day a week and eleven (11) hours.

87.    From on or about January 01, 2012 to December 31, 2014, Plaintiff Huer Huang had two (2) hours of break a day on Monday, Tuesday, Wednesday, Thursday, and Friday for five (5) days and ten (10) hours,

88.    Thus, From on or about January 01, 2012 to December 31, 2014, Plaintiff Huer Huang worked an average of sixty-one (61) hours a week.

89.    From on or about January 01, 2015 to April 15, 2016, Plaintiff HUER HUANG's regular work schedule ran from

a. 10:00 to 22:00 for twelve (12) hours on Monday, Tuesday, Wednesday, Thursday, and Friday for five (5) days a week and sixty (60) hours; and

b. 11:00 to 22:00 for eleven (11) hours on Saturday for one (1) day a week and eleven (11) hours.

90.    From on or about January 01, 2015 to April 15, 2016, Plaintiff HUER HUANG had one (1) hour of break on Monday, Tuesday, Wednesday, Thursday, and Friday for four (4) days a week and four (4) hours.

91.    Thus, from on or about January 01, 2015 to April 15, 2016, Plaintiff HUER HUANG worked for an average of sixty-seven (67) hours a week.

92.    From on or about June 6, 2016 to August 11, 2016, Plaintiff HUER HUANG's regular work schedule ran from:

a. 10:00 to 20:00 for ten (10) hours on Monday (half day to 16:00), Wednesday, Thursday, and Friday for three and a half (3.5) days a week and thirty-six (36) hours;

b. 11:00 to 21:00 for ten (10) hours on Saturday for one (1) day a week and ten (10) hours; and

c. 12:00 to 22:00 for ten (10) hours on Sunday for one (1) day a week and ten (10) hours.

93.    From on or about June 6, 2016 to August 11, 2016, Plaintiff HUER HUANG

had one (1) hour of break on Wednesday, Thursday, and Friday for three (3) days a week and three (3) hours.

94.     Thus, from on or about June 6, 2016 to August 11, 2016, Plaintiff HUER HUANG worked for an average of fifty-three (53) hours a week.

95.     At all relevant times, Plaintiff HUER HUANG did not have a fixed time for lunch or for dinner.

96.     From on or about August 12, 2008 to September 12, 2008, Plaintiff HUER HUANG was paid a flat compensation at a rate of one thousand six hundred dollars ($1600.00) in cash and in check per month.

97.     Specifically, from on or about August 12, 2008 to September 12, 2008, Plaintiff HUER HUANG would receive a paystub for thirty five (35) hours per week at a rate of seven dollars and twenty five cents ($7.25) each week in check, and the remainder in cash.

26. From on or about September 13, 2008 to September 13, 2009 , Plaintiff HUER HUANG was paid a flat compensation at a rate of one thousand seven hundred dollars ($1700.00) per month.

27. From on or about September 14, 2009 to October 14, 2010, Plaintiff HUER HUANG was paid a flat compensation at a rate of one thousand eight hundred dollars ($1800.00) per month.

28. From on or about October 15, 2010 to October 15, 2011, Plaintiff HUER HUANG was paid a flat compensation at a rate of two thousand dollars ($2000.00) per month.

29. From on or about October 16, 2011 to December 31, 2011, Plaintiff HUER HUANG was paid a flat compensation at a rate of two thousand one hundred dollars ($2,100.00) per month.

30. From on or about October 17, 2012 to October 17, 2013, Plaintiff HUER HUANG was paid a flat compensation at a rate of two thousand three hundred dollars ($2,300.00) per month.

31. From on or about October 18, 2013 to October 18, 2014, Plaintiff HUER HUANG was paid a flat compensation at a rate of two thousand four hundred dollars ($2,400.00) per month.

32. From on or about October 18, 2014 to August 11, 2016, Plaintiff HUER HUANG was paid a flat compensation at a rate of two thousand five hundred dollars ($2,500.00) per month.

33. At all relevant times, Plaintiff HUER HUANG was not paid overtime pay for overtime work.

53.    At all relevant times, Plaintiff HUER HUANG was never informed of his hourly pay rate or any tip deductions toward the minimum wage.

54.    At all relevant times, Plaintiff HUER HUANG's non-tipped work exceeds two (2) hours or twenty percent (20%) of Plaintiff's workday.

55.    Throughout his employment, Plaintiff HUER HUANG was not given a statement with his weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Chinese, Plaintiff's native language.

56.    Throughout his employment, Plaintiff HUER HUANG was not compensated at least at one-and-one-half his promised hourly wage for all hours worked above forty (40) in each workweek.

57.    Throughout his employment, Plaintiff HUER HUANG was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at his promised rate.

**Plaintiff *LIANQIN LU***

55.    From on or about December 29, 2008 to February 12, 2015, Plaintiff LIANQIN LU was employed by Defendants to work as a packer at 24 West 56th Street, New York NY 10019.

56.    From on or about December 29, 2008 to July 31, 2011, Plaintiff LIANQIN LU's regular work schedule ran from:

      a.    11:00 to 22:00, with one and three quarter (1.75) hour break for nine and a quarter (9.25) hours per day on Mondays, Tuesdays, Wednesdays, Thursdays for four (4) days and thirty seven (37) hours a week;

      b.    10:30 to 21:30, with one (1) hour break for ten (10) hours on Fridays; and

      c.    12:00 to 22:00, with one (1) hour break for nine (9) hours on Saturdays.

57.    Thus, from on or about December 29, 2008 to July 31, 2011, Plaintiff Lianqin Lu worked for an average of fifty six (56) hours a week.

58.    From on or about August 10, 2011 to February 12, 2015, Plaintiff LIANQIN LU's regular work schedule ran from:

      a.    11:00 to 22:00, with one and three quarter (1.75) hour break for nine and a quarter (9.25) hours per day on Mondays, Tuesdays, Wednesdays, Thursdays for four (4) days and thirty seven (37) hours a week;

      b.    10:30 to 15:30 with no break for five (5) hours on Fridays; and

      c.    12:00 to 22:00, with one (1) hour break for nine (9) hours on Saturdays.

55.     Thus, from on or about August 10, 2011 to February 12, 2015, Plaintiff Lianqin Lu worked for an average of fifty one (51) hours a week.

56.     At all relevant times, Plaintiff LIANQIN LU did not have a fixed time for lunch or for dinner.

57.     In fact, Plaintiff LIANQIN LU had 15 minutes to eat and even then she was on call, meaning that if customer's order came, her break stopped and he had to deliver.

58.     From on or about December 29, 2008 to July 31, 2011, Plaintiff LIANQIN LU was paid a flat compensation at a rate of four hundred seventy-nine dollars ($479.00) per weekly.

59.     Plaintiff was initially paid seven dollars and twenty-five cents ($7.25) an hour, including for hours in which he worked more than forty (40) hours in a workweek.

60.     Later on Plaintiff's wage rate increased to eight dollars ($8) an hour, including for hours in which he worked more than forty (40) hours in a workweek.

61.     Later on Plaintiff's wage rate increased to nine dollars ($9) an hour, including for hours in which he worked more than forty (40) hours in a workweek.

62.     Later on Plaintiff's wage rate increased to ten dollars ($10) an hour, including for hours in which he worked more than forty (40) hours in a workweek.

63.     Later on Plaintiff's wage rate increased to eleven dollars ($11) an hour, including for hours in which he worked more than forty (40) hours in a workweek.

64.      At all relevant times, Plaintiff LIANQIN LU was not paid overtime pay for overtime work.

65.     At all relevant times, Plaintiff LIANQIN LU was never informed of her hourly pay rate or any tip deductions toward the minimum wage.

66.     Throughout her employment, Plaintiff LIANQIN LU was not given a statement with her weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Chinese, Plaintiff's native language.

67.     Throughout her employment, Plaintiff LIANQIN LU was not compensated at least at one-and-one-half her promised hourly wage for all hours worked above forty (40) in each workweek.

68.     Throughout her employment, Plaintiff LIANQIN LU was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at her promised rate.

### Plaintiff GLORIA PEREZ MENDEZ

69.     From on or about March 15, 2016 to March 31, 2017, Plaintiff GLORIA PEREZ MENDEZ was employed by Defendants to work as a sorter and miscellaneous worker at 24 West 56th Street, New York NY 10019.

70.     From on or about March 15, 2016 to March 31, 2017, Plaintiff GLORIA PEREZ MENDEZ's regular work schedule ran from:

      a.    12:00 to 14:00 and again from 14:30 to between 22:00 and 23:00 for an average of ten (10) hours a day on Sunday; and

      b.    11:00 to 14:00 and again from 14:30 to between 22:00 to 23:00 for an average of eleven (11) hours a day on Wednesday, Thursday, Friday, and Saturday for four (4) days and forty-four (44) hours.

71.     Thus, from on or about March 15, 2016 to March 31, 2017, Plaintiff GLORIA

PEREZ MENDEZ worked an average of fifty-four (54) hours a week.

72.    From on or about March 15, 2016 to December 31, 2016, Plaintiff GLORIA PEREZ MENDEZ was promised to be paid at an hourly rate of nine dollar ($9) an hour.

73.    From on or about January 1, 2017 to March 31, 2017, Plaintiff GLORIA PEREZ MENDEZ was promised to be paid at an hourly rate of eleven dollars ($11) an hour.

74.    Plaintiff GLORIA PEREZ MENDEZ would receive her payments every fifteen days by two (2) checks, in addition to one hundred ($100) dollars in cash.

75.    However, Plaintiff GLORIA PEREZ MENDEZ would only receive forty (40) hours' worth of pay and was never was not paid for the total number of hours she actually worked.

76.    At all relevant times, Plaintiff GLORIA PEREZ MENDEZ was not paid overtime pay for overtime work.

77.    Throughout her employment, Plaintiff GLORIA PEREZ MENDEZ was not given a statement with her weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Spanish, Plaintiff's native language.

78.    Throughout her employment, Plaintiff GLORIA PEREZ MENDEZ was not compensated at least at one-and-one-half her promised hourly wage for all hours worked above forty (40) in each workweek.

79.    Throughout her employment, Plaintiff GLORIA PEREZ MENDEZ was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at her promised rate.

*Plaintiff CLARA FLORES*

80.    From on or about May 31, 2012 to September 30, 2016, Plaintiff CLARA FLORES was employed by Defendants to work as a dishwasher at 24 West 56th Street, New York NY 10019.

81.    From on or about May 31, 2012 to September 30, 2016, Plaintiff CLARA FLORES's regular work schedule ran from:

  a.  12:00 to 22:45 for ten (10) hours and forty-five (45) minutes a day on Saturday, Sunday, and Monday for three (3) days a week and thirty-two (32) hours and fifteen (15) minutes; and

  b.  16:00 to 22:45 for six (6) hours and forty-five (45) minutes a day on Thursday for one (1) day a week and six (6) hours and forty-five (45) minutes, for a total of thirty-nine (39) hours a week.

82.    At all relevant times, Plaintiff CLARA FLORES did not have a fixed time for lunch or for dinner.

83.    Each work day, Plaintiff CLARA FLORES would take at most fifteen (15) minutes to eat lunch very quickly.

84.    From on or about May 31, 2012 to September 30, 2016, Plaintiff CLARA FLORES was paid five hundred dollars ($500) in cash every fifteen days, on a Monday, usually on the 14th or 15th and the 29th or 30th.

85.    At all relevant times, Plaintiff CLARA FLORES was never informed of her hourly pay rate or any tip deductions toward the minimum wage.

86.    Throughout her employment, Plaintiff CLARA FLORES was not given a statement with her weekly payment reflecting employee's name, employer's name,

employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Spanish, Plaintiff's native language.

87.    Throughout her employment, Plaintiff CLARA FLORES was not compensated at least at one-and-one-half her promised hourly wage for all hours worked above forty (40) in each workweek.

88.    Throughout her employment, Plaintiff CLARA FLORES was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at her promised rate.

**Plaintiff REYES PEREZ GUERRERO**

89.    From on or about February 01, 2008 to January 15, 2017, Plaintiff REYES PEREZ GUERRERO was employed by Defendants to work as a dishwasher at 24 West 56th Street, New York NY 10019.

90.    From on or about February 01, 2008 to June 30, 2014, Plaintiff REYES PEREZ GUERRERO's regular work schedule ran from:

    a.    10:30 to 22:30 for twelve (12) hours a day for six (6) days and sixty-six (72) hours

91.    From on or about Febuary 01, 2008 to June 30, 2014 Plaintiff REYES PEREZ GUERRERO had two (2) hours of break a day for six (6) days and twelve (12) hours in a week.

92.    Thus, from on or about Febuary 01, 2008 to June 30, 2014, Plaintiff REYES PEREZ GUERRERO for an average of sixty (60) hours a week.

93.    From on or about July 01, 2014 to January 15, 2017, Plaintiff REYES PEREZ

GUERRERO's regular work schedule ran from:

     a.   10:30 to 22:30 for twelve (12) hours a day for six (6) days and seventy-two

         (72) hours.

94.    From on or about July 01, 2014 to January 15, 2017, Plaintiff REYES PEREZ

GUERRERO had thirty (30) minutes of break time a day for six (6) days and three (3) hours

95.    Thus, from July 01, 2014 to January 15, 2017, Plaintiff REYES PEREZ

GUERRERO worked an average of sixty-nine (69) hours a week.

96.    At all relevant times, Plaintiff REYES PEREZ GUERRERO did not have a

fixed time for lunch or for dinner.

97.    From on or about February 01, 2008 to December 31, 2009, Plaintiff REYES

PEREZ GUERRERO was paid a flat compensation at a rate of three hundred dollars

($300.00) per biweekly.

98. From on or about January 01, 2010 to December 31, 2016 , Plaintiff REYES PEREZ

GUERRERO was paid a flat compensation at a rate of three hundred seventy-five dollars

($375.00) per weekly.

99. From on or about January 01, 2017 to January 15, 2017, Plaintiff REYES PEREZ

GUERRERO was paid a flat compensation at a rate of six hundred seventy dollars ($670.00) per

weekly.

100.    At all relevant times, Plaintiff REYES PEREZ GUERRERO was not paid

overtime pay for overtime work.

101.    At all relevant times, Plaintiff REYES PEREZ GUERRERO was never

informed of his hourly pay rate or any tip deductions toward the minimum wage.

102.    At all relevant times, Plaintiff REYES PEREZ GUERRERO's non-tipped

work exceeds two (2) hours or twenty percent (20%) of Plaintiff's workday.

103.    Throughout his employment, Plaintiff REYES PEREZ GUERRERO was not given a statement with his weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Spanish, Plaintiff's native language.

104.    Throughout his employment, Plaintiff REYES PEREZ GUERRERO was not compensated at least at one-and-one-half his promised hourly wage for all hours worked above forty (40) in each workweek.

105.    Throughout his employment, Plaintiff REYES PEREZ GUERRERO was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at his promised rate.

***Plaintiff HUI ZHEN HUANG***

106.    From on or about October 01, 2012 to April 15, 2015, Plaintiff HUI ZHEN HUANG was employed by Defendants to work as a vegetable cutter at 24 West 56th Street, New York NY 10019.

107.    From on or about October 01, 2012 to September 30, 2013, Plaintiff HUI ZHEN HUANG's regular work schedule ran from:

    a.  10:00 to 22:00 for twelve (12) hours a day on Monday, Tuesday, Wednesday, Thursday, and Friday for five (5) days and sixty (60) hours; and

    b.  11:00 to 22:00 for eleven (11) hours a day on Saturday for one (1) day and eleven (11) hours.

108.    From on or about October 01, 2012 to April 15, 2015, plaintiff HUI ZHEN

HUANG had two (2) hours of break a day on Monday, Tuesday, Wednesday, Thursday, and Friday for five (5) days and ten (10) hours,

109.    Thus, from on or about October 01, 2012 to September 30, 2013, Plaintiff HUI ZHEN HUANG worked an average of sixty-one (61) hours a week.

110.    From on or about October 01, 2013 to April 15, 2015, Plaintiff HUI ZHEN HUANG's regular work schedule ran from:

      a.    10:00 to 21:00 for eleven (11) hours a day on Monday, Tuesday, Wednesday, Thursday, and Friday for five (5) days and fifty-five (55) hours and

      b.    11:00 to 16:00 for five (5) hours a day on Saturday for one (1) day and five (5) hours.

111.    From on or about October 01, 2013 to April 15, 2015 HUI ZHEN HUANG had two (2) hours of break a day on Monday, Tuesday, Wednesday, Thursday, and Friday for five (5) days and ten (10) hours

112.    Thus, from on or about October 01, 2013 to April 15, 2015, Plaintiff HUI ZHEN HUANG worked an average of fifty (50) hours a week

113.    At all relevant times, Plaintiff HUI ZHEN HUANG did not have a fixed time for lunch or for dinner.

114.    From on or about October 01, 2012 to September 30, 2013, Plaintiff HUI ZHEN HUANG was paid a flat compensation at a rate of seven dollars ($7.25) per hour including for hours she worked in excess of forty (40) hours in a workweek.

115.    As a result, Plaintiff was paid at only the one time rate instead of the one and a half times rate for hours worked in excess of forty (40) hours in a workweek.

116.    From October 01, 2013 onwards, Plaintiff HUI ZHEN HUANG was initially

paid a flat compensation at an hourly rate of rate of eight dollars ($8.00) per hour for each hour worked, including for hours worked in excess of forty (40) hours in a workweek.

117.    Later on, her pay increased to eight dollars and seventy five cents ($8.75) per hour for each hour worked, including for hours worked in excess of forty (40) hours in a workweek.

118.    At all relevant times, Plaintiff HUI ZHEN HUANG was not paid overtime pay for overtime work.

119.    At all relevant times, Plaintiff HUI ZHEN HUANG was never informed of her hourly pay rate or any tip deductions toward the minimum wage.

120.    At all relevant times, Plaintiff HUI ZHEN HUANG's non-tipped work exceeds two (2) hours or twenty percent (20%) of Plaintiff's workday.

121.    Throughout her employment, Plaintiff HUI ZHEN HUANG was not given a statement with her weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Chinese, Plaintiff's native language.

122.    Throughout her employment, Plaintiff HUI ZHEN HUANG was not compensated at least at one-and-one-half her promised hourly wage for all hours worked above forty (40) in each workweek.

123.    Throughout her employment, Plaintiff HUI ZHEN HUANG was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at her promised rate.

***Plaintiff JUAN LI***

124.    From on or about October 01, 2012 to May 01, 2014, Plaintiff JUAN LI was

employed by Defendants to work as a packer at 24 West 56th Street, New York NY 10019.

125. From on or about October 01, 2012 to October 31, 2013 and from on or about December 1, 2013 to May 1, 2014, Plaintiff JUAN LI's regular work schedule ran from:

     a. 11:30 to 22:30 for eleven (11) hours a day on Monday, Thursday, and Friday for three (3) days and thirty-three hours;

     b. 17:00 to 22:30 for five (5) hours and thirty (30) minutes a day on Wednesday for one (1) day and five (5) hours and thirty (30) minutes;

     c. 11:00 to 22:30 for eleven (11) hours and thirty (30) minutes a day on Saturday for one (1) day and eleven (11) hours and thirty (30) minutes; and

     d. 12:00 to 21:45 for nine (9) hours and forty-five (45) minutes a day on Sunday for one (1) day and nine (9) hours and forty-five (45) minutes.

126. From on or about October 01, 2012 to October 31, 2013 and from on or about December 1, 2013 to May 1, 2014, Plaintiff JUAN LI had break between two and a half (2.5) hours and one and three quarters (1.75) hours a day for five (5) days and ten (10) hours and thirty-eight (38) minutes.

127. Thus, from on or about October 01, 2012 to October 31, 2013 and from on or about December 1, 2013 to May 1, 2014, Plaintiff Juan Li worked for a total of forty-nine (49) hours and eight (8) minutes a week.

128. From on or about November 1, 2013 to November 30, 2013, Plaintiff JUAN LI's regular work schedule ran from:

     a. 11:30 to 22:30 for eleven (11) hours a day on Monday, Wednesday, Thursday, and Friday for four (4) days and forty-four (44) hours;

     b. 11:00 to 22:30 for eleven (11) hours and thirty (30) minutes a day on Saturday

for one (1) day and eleven (11) hours and thirty (30) minutes; and

c. 12:00 to 21:45 for nine (9) hours and forty-five (45) minutes a day on Sunday for one (1) day and nine (9) hours and forty-five (45) minutes.

129.    From on or about November 1, 2013 to November 30, 2013, Plaintiff JUAN LI had break forty-five (45) minutes a day for six (6) days and four (4) hours and thirty (30) minutes a week.

130.    Thus, from on or about November 1, 2013 to November 30, 2013, Plaintiff Juan Li worked for a total of sixty (60) hours and forty-five (45) minutes a week.

131.    At all relevant times, Plaintiff JUAN LI did not have a fixed time for lunch or for dinner.

132.    In fact, Plaintiff JUAN LI had 15 minutes to eat and even then she was on call, meaning that if customer's order came, her break stopped and he had to deliver.

133.    From on or about October 01, 2012 to May 01, 2014, Plaintiff JUAN LI was paid a flat compensation at a rate of one thousand seventy dollars ($1070.00) per biweekly in cash and in check.

134.    Specifically, Plaintiff received thirty (30) hours in check and the remainder in cash.

135.    At all relevant times, Plaintiff JUAN LI was not paid overtime pay for overtime work.

136.    At all relevant times, Plaintiff JUAN LI was never informed of her hourly pay rate or any tip deductions toward the minimum wage.

137.    At all relevant times, Plaintiff JUAN LI's non-tipped work exceeds two (2) hours or twenty percent (20%) of Plaintiff's workday.

138.    Throughout her employment, Plaintiff JUAN LI was not given a statement with her weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Chinese, Plaintiff's native language.

139.    Throughout her employment, Plaintiff JUAN LI was not compensated at least at one-and-one-half her promised hourly wage for all hours worked above forty (40) in each workweek.

140.    Throughout her employment, Plaintiff JUAN LI was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at her promised rate.

**Plaintiff HAIHUA ZHAI a/k/a Bin Xu**

141.    From on or about November 25, 2013 to February 24, 2015, Plaintiff HAIHUA ZHAI a/k/a Bin Xu was employed by Defendants to work as a delivery man at 24 West 56th Street, New York NY 10019.

142.    From on or about November 25, 2013 to February 24, 2015, Plaintiff HAIHUA ZHAI a/k/a Bin Xu's regular work schedule ran from 12:30 to 21:30 for nine (9) hours a day on Sunday for one (1) day and nine (9) hours, 10:45 to 15:00 and 17:30 to 21:00 for seven (7) hours and forty-five (45) minutes a day on Monday, Tuesday, Wednesday, and Thursday for four (4) days and thirty-one (31) hours, for a total of forty (40) hours a week while on the set of shifts known as "SCHEDULE A" for a total of forty (40) hours each week.

143.    From on or about November 25, 2013 to February 24, 2015, Plaintiff HAIHUA ZHAI a/k/a Bin Xu's regular work schedule ran from 13:00 to 22:00 for nine (9) hours a day on Sunday for one (1) day and nine (9) hours; 11:30 to 15:00 and 17:45 to 22:15

for eight (8) hours a day on Monday, Tuesday, and Friday for three (3) days and twenty-four (24) hours; 12:30 to 15:00 and 17:00 to 21:30 for seven (7) hours a day on Saturday for one (1) day and seven (7) hours, for a total of forty (40) hours a week while on the set of shifts known as "SCHEDULE B" for a total of 40 hours each week.

144.    From on or about November 25, 2013 to February 24, 2015, Plaintiff HAIHUA ZHAI a/k/a Bin Xu's regular work schedule ran from 18:00 to 22:00 for four (4) hours a day on Sunday for one (1) day and four (4) hours; 11:30 to 15:00 and 18:00 to 22:15 for seven (7) hours and forty-five (45) minutes a day on Monday, Wednesday, and Thursday for three (3) days and twenty-three (23) hours and fifteen (15) minutes; 11:30 to 15:00 and 17:30 to 22:15 for eight (8) hours and fifteen (15) minutes a day on Friday for one (1) day and eight (8) hours and fifteen (15) minutes; 17:30 to 22:00 for four (4) hours and thirty (30) minutes a day for one (1) day on Saturday and four (4) hours and thirty (30) minutes, for a total of forty (40) hours a week while on the set of shifts known as "SCHEDULE C" for a total of 40 hours each week.

145.    From on or about November 25, 2013 to February 24, 2015, Plaintiff HAIHUA ZHAI a/k/a Bin Xu's regular work schedule ran from 11:30 to 15:00 and 17:45 to 22:15 for eight (8) hours a day on Tuesday, Wednesday, and Thursday for three (3) days and twenty-four (24) hours; 10:45 to 15:00 and 17:45 to 21:00 for seven (7) hours and thirty (30) minutes a day on Friday for seven (7) hours and thirty (30) minutes; 11:30 to 15:00 and 17:00 to 22:00 for eight (8) hours and thirty (30) minutes a day on Saturday for one (1) day and eight (8) hours and thirty (30) minutes, for a total of forty (40) hours a week while on the set of shifts known as "SCHEDULE D" for a total of 40 hours each week.

146.    From on or about November 25, 2013 to February 24, 2015, Plaintiff HAIHUA ZHAI a/k/a Bin Xu's regular work schedule ran from 11:15 to 15:00 and 17:15 to 21:30 for eight

(8) hours a day on Monday, Tuesday, Wednesday, Thursday, and Friday for five (5) days, for a

total of forty (40) hours a week while on the set of shifts known as "SCHEDULE E" for a total

of 40 hours each week.

147.    At all relevant times, Plaintiff HAIHUA ZHAI a/k/a Bin Xu did not have a

fixed time for lunch or for dinner.

148.    From on or about November 25, 2013 to June 26, 2016, Plaintiff HAIHUA

ZHAI a/k/a Bin Xu was paid a flat compensation at a rate of two thousand two hundred fifty

dollars ($2250.00) per monthly.

149.     At all relevant times, Plaintiff HAIHUA ZHAI a/k/a Bin Xu was not paid

overtime pay for overtime work.

150.    At all relevant times, Plaintiff HAIHUA ZHAI a/k/a Bin Xu was never

informed of his hourly pay rate or any tip deductions toward the minimum wage.

151.    Further, at all relevant times, Plaintiff HAIHUA ZHAI a/k/a Bin Xu had to do

side work.

152.    At all relevant times, Plaintiff HAIHUA ZHAI a/k/a Bin Xu's non-tipped work

exceeds two (2) hours or twenty percent (20%) of Plaintiff's workday.

153.    Throughout his employment, Plaintiff HAIHUA ZHAI a/k/a Bin Xu was not

given a statement with his weekly payment reflecting employee's name, employer's name,

employer's address and telephone number, employee's rate or rates of pay, any deductions

made from employee's wages, any allowances claimed as part of the minimum wage, and the

employee's gross and net wages for each pay day in Chinese, Plaintiff's native language.

154.    Throughout his employment, Plaintiff HAIHUA ZHAI a/k/a Bin Xu was not

compensated at least at one-and-one-half his promised hourly wage for all hours worked

above forty (40) in each workweek.

155.    Throughout his employment, Plaintiff HAIHUA ZHAI a/k/a Bin Xu was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at his promised rate.

## COLLECTIVE ACTION ALLEGATIONS

98.    Plaintiffs bring this action individually and as class representative individually and on behalf of all other and former non-exempt employees who have been or were employed by the Defendants for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") and whom were not compensated at their promised hourly rate for all hours worked and at one and one half times their promised work for all hours worked in excess of forty (40) hours per week (the "Collective Action Members").

## CLASS ACTION ALLEGATIONS

99.    Plaintiffs bring their NYLL claims pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") Rule 23, on behalf of all non-exempt personnel employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

100.    All said persons, including Plaintiffs, are referred to herein as the "Class."

101.    The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class Member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said Fed. R. Civ. P. 23.

*Numerosity*

102.    The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) members of the class.

*Commonality*

103.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a.    Whether Defendant employed Plaintiffs and the Class within the meaning of the New York law;

b.    Whether Plaintiffs and Class members are promised and not paid at their promised hourly wage;

c.    Whether Plaintiff and Class members are not paid at least the hourly minimum wage for each hour worked;

d.    Whether Plaintiffs and Class members are entitled to and paid overtime at their promised hourly wage under the New York Labor Law;

e.    Whether Defendants maintained a policy, pattern and/or practice of failing to pay Plaintiffs and the Rule 23 Class spread-of-hours pay as required by the NYLL;

f.    Whether Plaintiff and Class members are required to provide and maintain tools of the trade on Defendants' behalf at their own cost;

g.    Whether Defendants maintained a policy, pattern and/or practice of failing to provide requisite statutory meal periods;

h.    Whether Defendants provided a Time of Hire Notice detailing rates of pay and payday at the start of Plaintiffs and the Rule 23 Class's start of employment and/or timely thereafter;

i.    Whether Defendants provided paystubs detailing the rates of pay and credits taken towards the minimum wage to Plaintiffs and the Rule 23 class on each payday; and

j.    At what common rate, or rates subject to common method of calculation was and is Defendants required to pay the Class members for their work.

*Typicality*

104.    Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage or overtime compensation. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

*Adequacy*

105.    Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in representing Plaintiffs in both class action and wage-and-hour employment litigation cases.

*Superiority*

106.    A class action is superior to other available methods for the fair and efficient

adjudication of the controversy, particularly in the context of wage-and-hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of efforts and expenses that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

107.    Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to

secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## STATEMENT OF CLAIMS

### COUNT I.
**[Violations of Fair Labor Standards Act—Failure to Pay Minimum Wage and Wages Brought on behalf of the Plaintiffs HUER HUANG, LIANQIN LU, GLORIA PEREZ MENDEZ, CLARA FLORES, REYES PEREZ GUERRERO and the FLSA Collective]**

108.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

109.    At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiffs in full, and the similarly situated collective action members, for some or all of the hours they worked.

110.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 206 shall be liable to the employees affected in the amount of their unpaid wage, and in an additional equal amount as liquidated damages.

111.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by failing to compensate Plaintiffs and Collective Class Members at the statutory minimum wage when they knew or should have known such was due and that failing to do so would financially injure Plaintiff and Collective Action members.

### COUNT II.
**[Violation of New York Labor Law—Failure to Pay Minimum Wage and Wages Brought on behalf of Plaintiff and Rule 23 Class]**

112.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

113.    At all relevant times, Plaintiffs are employed by Defendants within the

meaning of New York Labor Law §§ 2 and 651.

114.    At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiff, and the collective action members, in full for some or all of the hours they worked.

115.    Defendants knowingly and willfully violated Plaintiff's and similarly situated Class Members' rights by failing to pay him minimum wages in the lawful amount for hours worked.

116.    An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty five percent (25%) of the shortfall under NYLL §§ 190 *et seq.*, §§ 650 *et seq.*, and one hundred percent (100%) after April 9, 2011 under NY Wage Theft Prevention Act, and interest.

## COUNT III.
**[Violations of the Fair Labor Standards Act—Failure to Pay Overtime Brought on behalf of the Plaintiffs HUER HUANG, LIANQIN LU, GLORIA PEREZ MENDEZ, CLARA FLORES, REYES PEREZ GUERRERO and the FLSA Collective]**

117.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

118.    The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he is employed, or one and one-half times the minimum wage, whichever is greater. 29 U.S.C. § 207(a).

119.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC § 216(b).

120.    Defendants' failure to pay Plaintiffs and the FLSA Collective their overtime

pay violated the FLSA.

121.    At all relevant times, Defendants had, and continue to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiffs and Collective Action Members for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

122.    The FLSA and supporting regulations required employers to notify employees of employment law requires employers to notify employment law requirements. 29 C.F.R. § 516.4.

123.    Defendants willfully failed to notify Plaintiffs and FLSA Collective of the requirements of the employment laws in order to facilitate their exploitation of Plaintiff' and FLSA Collectives' labor.

124.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and Collective Class Members the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known such was due and that failing to do so would financially injure Plaintiffs and Collective Action members.

### COUNT IV.
**[Violation of New York Labor Law—Failure to Pay Overtime
Brought on behalf of Plaintiff and Rule 23 Class]**

125.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

126.    An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty-five percent (25%) before April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft

Prevention Act, and interest.

127.    At all relevant times, Defendants had a policy and practice of refusing to pay the overtime compensation to Plaintiffs at one and one-half times the hourly rate the Plaintiffs and the class are entitled to.

128.    Defendant' failure to pay Plaintiffs their overtime pay violated the NYLL.

129.    Defendants' failure to pay Plaintiffs was not in good faith.

## COUNT V.
### [Violation of New York Labor Law—Spread of Time Pay
### Brought on behalf of Plaintiff and Rule 23 Class]

130.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

131.    The NYLL requires employers to pay an extra hour's pay for every day that an employee works an interval in excess of ten hours pursuant to NYLL §§ 190, *et seq.*, and §§ 650, *et seq.*, and New York State Department of Labor regulations § 146-1.6.

132.    Defendants' failure to pay Plaintiffs spread-of-hours pay was not in good faith.

## COUNT VI.
### [Violation of New York Labor Law—Failure to Provide Meal Periods
### Brought on behalf of Plaintiff and the Rule 23 Class]

133.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

134.    The NYLL requires that employees provide: a noon day meal period of at least thirty (30) minutes for employees who work a shift of more than six hours extending over the noon day meal period from 11 a.m. to 2 p.m.; an additional meal period between 5 p.m. and 7 p.m. of at least twenty (20) minutes for employees whose shift started before 11 a.m. and continues later than 7 p.m.; and/or a forty-five (45) minute meal period at a time midway between the beginning and end of the shift for employees whose shift lasts more than six

hours and starts between 1 p m. and 6 a.m. NYLL § 162.

135.    Defendants failed to provide meal periods required by NYLL § 162 for every day that Plaintiff worked.

136.    Though the Department of Labor commissioner may permit a shorter time to be fixed for meal periods than hereinbefore provided, such permit must be in writing and be kept conspicuously posted in the main entrance of the establishment. No such permit is posted.

137.    Defendants' failure to provide the meal periods required by NYLL § 162 was not in good faith.

## COUNT VII.
### [Violation of New York Labor Law—Failure to Keep Records
### Brought on behalf of Plaintiff and Rule 23 Class]

138.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

139.    Defendants did not maintain, establish and preserve Plaintiffs' weekly payroll records for a period of not less than six years, as required by NYCRR § 146-2.1.

140.    As a result of Defendants' unlawful conduct, Plaintiffs have sustained damages including loss of earning, in an amount to be established at trial, liquidated damages, prejudgment interest, costs and attorneys' fee, pursuant to the state law.

141.    Upon information and belief, Defendants failed to maintain adequate and accurate written records of actual hours worked and true wages earned by Plaintiffs in order to facilitate their exploitation of Plaintiffs' labor.

142.    Defendants' failure to maintain adequate and accurate written records of actual hours worked and true wages earned by Plaintiff were not in good faith.

### COUNT VIII.
### [Violation of New York Labor Law—Failure to Provide Time of Hire Wage Notice Brought on behalf of Plaintiff and Rule 23 Class]

143.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

144.    The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.  NYLL §195-1(a).

145.    Defendants intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on their or her first day of employment.

146.    Defendants not only did not provide notice to each employee at Time of Hire, but failed to provide notice to Plaintiffs even after the fact.

147.    Due to Defendants' violations of New York Labor Law, Plaintiff is entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-b).

### COUNT IX.
### [Violation of New York Labor Law—Failure to Provide Wage Statements Brought on behalf of Plaintiff and Rule 23 Class]

148.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as

though fully set forth herein.

149.    The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL § 195-1(d).

150.    Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiff, and did not provide the paystub on or after each Plaintiffs' payday.

151.    Due to Defendants' violations of New York Labor Law, Plaintiffs are entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-d).

## COUNT X.
**[Breach of Implied Contract for Reimbursement of all Costs and Expenses of Electric Delivery Vehicle, including Depreciation, Insurance, Maintenance and Repairs Brought on behalf of the Plaintiff ZHAI and the Class]**

152.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

153.    Throughout the relevant period, Defendants required their deliverymen to bear all of the "out-of-pocket" costs associated with their vehicles, including the purchase, maintenance, repair, maintenance of the delivery vehicles, including bicycles and electric bicycles.

154.    Based on his personal experience and available information, Plaintiff ZHAI can document actual "out-of-pocket" vehicle related expenses of his electricity delivery bicycle.

155.    The conduct of Defendants, and the course of Defendant's conduct between the parties, evidenced an intent for Plaintiff ZHAI to maintain the delivery vehicle in working condition.

156.    Plaintiff ZHAI purchased, maintained and repaired the electric bicycle at their own expense.

157.    Plaintiff ZHAI performed these deliveries for the sole benefit of the Defendants.

158.    Defendants neither explicitly nor implicitly requested Plaintiff to cease the purchase of gasoline and/or the maintenance of the vehicle.

159.    As a result of the afore-alleged conduct of the parties, an implied contract arose between them the terms of which are that Plaintiffs would incur the expenses for bicycle purchase and vehicle maintenance, in exchange for compensation from Defendants for such expenses.

160.    Defendants never compensated Plaintiffs for any expenses incurred from the purchase and maintenance of the electric bicycles, and the purchase of batteries. As a result, Defendants breached the implied contract by failing and refusing to pay Plaintiff a reasonable sum under the afore-alleged facts.

161.    Defendants owe Plaintiffs their overdue costs of delivery vehicles, cost of batter change, if applicable, and maintenance of the bicycle.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, and on the behalf of the FLSA Collective Plaintiffs and Rule 23 Class, respectfully request that this Court enter a judgment providing the following relief:

a)    Authorizing Plaintiffs at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendants as non-exempt employees.

Such notice shall inform them that the civil notice has been filed, of the nature of the action, of his right to join this lawsuit if they believe they were denied premium overtime wages;

b)      Certification of this case as a collective action pursuant to FLSA;

c)      Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiff and their counsel to represent the Collective Action Members;

d)      A declaratory judgment that the practices complained of herein are unlawful under FLSA and New York Labor Law;

e)      An injunction against Corporate Defendants, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

f)      An award of unpaid minimum wage and overtime wages due under FLSA and New York Labor Law due Plaintiffs and the Collective Action members plus compensatory and liquidated damages in the amount of twenty five percent (25%) prior to April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act;

g)      An award of out-of-pocket breach-of-contract delivery costs for motorcycle expenses incurred and expended by Plaintiff on Defendants' bequest and behalf;

h)      An award of liquidated and/or punitive damages as a result of Defendants' knowing and willful failure to pay wages at least the hourly minimum wage, overtime compensation pursuant to 29 U.S.C. §216;

i)   Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday;

j)   Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day;

k)   An award of liquidated and/or punitive damages as a result of Defendants' willful failure to overtime compensation, and "spread of hours" premium pursuant to New York Labor Law;

l)   An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. §216(b) and NYLL §§198 and 663;

m)   The cost and disbursements of this action;

n)   An award of prejudgment and post-judgment fees;

o)   Providing that if any amounts remain unpaid upon the expiration of ninety days following the issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL §198(4); and

p)   Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated: Flushing, New York
August 16, 2019                    TROY LAW, PLLC

                                   *Attorneys for the Plaintiffs, proposed FLSA*
                                   *Collective and potential Rule 23 Class*
                                   /s/ John Troy
                                   John Troy (JT0481)