UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
                                   :

HUER HUANG, et al.,                    :

                                   :

               Plaintiffs,     :       19-cv-7702 (LJL)
          -v-                   :

                                   :       <u>OPINION & ORDER</u>

SHANGHAI CITY CORP., et al.       :

                                   :

             Defendants.     :

                                   :

-------------------------------------------------------------- :
                                   X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__5/11/2020__

LEWIS J. LIMAN, United States District Judge:

      Visitors to New York's Chinatown are advised not to miss an opportunity to stop off at Joe's Shanghai to sample their celebrated soup-dumplings.[1]  The question presented by this case is whether that restaurant and the company and individuals who own it are legally responsible for the labor law violations of other Joe's Shanghai restaurants offering the same soup dumplings.

      Plaintiffs are employees who worked at one of two Joe's Shanghai restaurants.  Eight of the plaintiffs worked at the West 56th Street location of Joe's Shanghai ("Midtown location") in jobs ranging from "meat and miscellaneous worker," to packer, to sorter, to dishwasher, to cutter, and to delivery man.  First Amended Complaint, Dkt. No. 17 ("FAC") ¶¶ 25-32.  One plaintiff worked as a dishwasher at the Flushing location of Joe's Shanghai ("Flushing location").  FAC ¶ 33.  A tenth plaintiff is identified only as a "xiaolongtangbao assistant chef and chef," without a location.  FAC ¶ 34.

      The defendants include the corporation that operated the Midtown location of Joe's Shanghai, Shanghai City Corp., FAC ¶ 35, and the two corporations that, at different times, owned and managed the Flushing location, East Brother Corp. and Shanghai Original Inc.  FAC ¶¶ 41, 44.[2]  The defendants also include Shanghai Duplicate Corp., which operates the Joe's Shanghai at 9 Pell Street in the Chinatown area of Manhattan ("Chinatown location").  FAC ¶ 38.

---

[1] *See* ZAGAT, *Joe's Shanghai*, available at https://www.zagat.com/r/joes-shanghai-restaurant-new-york1; *See also* Wikipedia, *Soup Dumpling*, available at https://en.wikipedia.org/wiki/Soup_dumpling ("[a] soup dumpling is] [a] dumpling served in soup or with liquid filling.").

[2] According to Defendants, East Brother Corp. is the current operator of the Flushing location and Shanghai Original is the former operator.  Memorandum of Law in Support of Defendants' Motion to Dismiss First Amended Complaint, Dkt. No. 77 at 1-2.

Plaintiffs also name 12 individual defendants.  FAC ¶¶ 47-71.  Three of those individuals, Yiu Fai Fong, Tun Yee Lam, and Gui Bing Shi, own or manage the Flushing location alone. FAC ¶¶ 50-54.  Three others, Kui Song Si, Solomon C. Liou, and William Ko, own or manage the Midtown location alone.  FAC ¶¶ 48, 56, 60.

One individual, Kiu Sang Si ("Si"), is alleged to have been the founder of the Joe's Shanghai Group of Restaurants, the 50% owner of the Chinatown and Midtown locations, and the CEO of Shanghai Original.  FAC ¶ 48.

Two individuals, Lillian Liou and Cheng Kueng Liu, are the other owners of the Chinatown location, each holding a 25% interest.  But they are alleged to have no other role, and no role with respect to the Midtown or Flushing locations.  FAC ¶¶ 62, 64.  Two others, Yun Cai and John Zhang, are each kitchen managers at the Chinatown location, and Terry Ho is described only as "[an] officer" of the Chinatown location.  FAC ¶¶ 66, 68 70.  (These individuals, along with Shanghai Duplicate Corp., are referred to collectively as the "Chinatown Defendants").

Plaintiffs allege that Defendants violated the Fair Labor Standards Act, 29 U.S.C. § 215 ("FLSA") and the New York Labor Law, N.Y. Lab. Law § 215 ("NYLL") by engaging in a pattern and practice of failing to paying their employees, including Plaintiffs, minimum wage for each hour worked and overtime compensation for all hours worked over forty (40) each week. FAC ¶ 2.  Plaintiff Haihua Zhai also alleges that she is entitled to recover out of pocket expenses to delivery experts on the road.  FAC ¶¶ 5-6.

Defendants now move, pursuant to Fed. R. Civ. P. 12(c), for judgment on the pleadings against the Chinatown defendants.  They also move, pursuant to Fed. R. Civ. P. 12(b)(1), for to dismiss the claims made by individual plaintiffs Lianqin Lu, Hui Zhen Huang, Juan Li, and Haihua Zhai on the grounds that their claims don't fall within the FLSA statute of limitations period and the Court lacks supplemental jurisdiction over their NYLL claims.  Finally, Defendants move for an order preventing Plaintiffs from pursuing a class action with their current counsel, the law office of Mr. Troy.

PROCEDURAL HISTORY

The path that led Plaintiffs to this case is long and somewhat tortured.  This is only the most recent of a series of FLSA and NYLL lawsuits against Joe's Shanghai restaurants filed in the state and federal courts of New York.  The history of those lawsuits was ably recounted by Judge Caproni in *Lin v. Shanghai City Corp.*, 329 F.R.D. 36, 37–39 (S.D.N.Y. 2018), and will be recounted only in brief here.

In October 2016, Jianmin Jin and Chunyou Xie, two former members of the kitchen staff at the Flushing location, brought a collective action alleging FLSA and NYLL violations by a group of corporate and individual defendants associated with the three Joe's Shanghai restaurants.  The individual defendants included Si, who is also a defendant here and the linchpin to Plaintiffs' claim here against Chinatown.

During the course of that litigation, Magistrate Judge Orenstein certified an FLSA collective action on behalf of workers at the Flushing location (but not the Chinatown or Midtown locations). *See Jin v. Shanghai Original, Inc.*, 2018 WL 1597389 (E.D.N.Y. Apr. 2, 2018). Judge Ross subsequently granted the defendants' motion to decertify the class of workers at the Flushing location. *See* Order Decertifying the Class, *Jin v. Shanghai Original, Inc.*, 2018 WL 1597389, 16-cv-5633 (Jul. 10, 2019), Dkt. No. 181. In her opinion declining to certify a class consisting of employees at all three locations, Judge Ross noted that "the record developed in discovery shows that there was no common unlawful employment policy or practice shared by the Midtown and Flushing locations," *Jin v. Shanghai Original, Inc.*, 2018 WL 1597389, at *1 (E.D.N.Y. Apr. 2, 2018), and that "[a]lthough they share a single name and website, the three locations of Joe's Shanghai are now independently owned and managed." *Id.* The court also noted that one of the opt-in plaintiffs—Xie He—"worked at the Flushing, Midtown, and Chinatown locations of Joe's Shanghai at various times," *id.* at *2, and another "[o]pt-in plaintiff Hui Qui Chen worked at both the Chinatown and Midtown locations." *Id.* In a later opinion, Judge Ross found that Si had not been involved in running the Flushing location since 2012 and that "[t]he owners of the Flushing location are not involved in managing the Chinatown and Midtown locations, and vice versa," but that "[i]n 2014 and 2015, Si would use East Brother [Corp.]'s truck three days per week to deliver food to the Chinatown and Midtown restaurants." *Jin v. Sanghai Original, Inc.*, 2019 WL 3244187 at *1 (E.D.N.Y. July 19, 2019).

Some of the plaintiffs in *Jin* are also plaintiffs here. Specifically, Plaintiffs Huer Huang, Lianqin Lu, Hui Zhen Huang, Juan Li, and Haihua Zhai participated in *Jin* as collective members but their claims were dismissed without prejudice and no final judgment was entered as to them.

Shortly after the Eastern District denied conditional collective certification to employees of the Chinatown location and denied leave to amend the complaint, several plaintiffs filed suit in New York State Supreme Court, New York County, alleging violations of NYLL and the New York General Business Law ("NYGBL") based on similar allegations. A few months after filing the lawsuit, plaintiffs voluntarily dismissed it with prejudice. *See Lin*, 329 F.R.D., at *38.

On February 9, 2018, the same day as they dismissed the state court action, the same plaintiffs filed a second Eastern District action containing identical allegations but pleading FLSA causes of action in addition to the New York state claims. That action was voluntarily dismissed. *Id.*

A few days later, one of the plaintiffs in the *Jin* action, Jian Ying Lin, filed a Southern District action alleging FLSA, NYLL, and NYGBL causes of action. Three of the plaintiffs here—Gloria Perez Mendez, Clara Flores, and Reyes Perez Guerrero—opted into the *Lin* action. On November 6, 2018, the District Court granted summary judgment to the defendants against the named plaintiffs in *Lin* but dismissed the claims of Mendez, Flores and Guerrero without prejudice. *Id.* at 36, 43.

On August 16, 2019, Plaintiffs (including opt-in Plaintiffs from *Jin* and *Lin* whose claims were dismissed without prejudice) instituted this action by filing a complaint against Defendants. *See* Dkt No. 1. On October 8, 2019, Plaintiffs filed their First Amended Complaint. Dkt No 17. On March 6, 2020, Defendants filed their motion for judgment on the pleadings, Dkt No. 75.

Plaintiffs filed their memorandum in opposition on April 3, 2020, Dkt No. 87, and Defendants filed their reply brief on April 17, 2020.  Dkt No 88.

DISCUSSION

1. <u>Defendants' Motion for Judgment on the Pleadings Against the Chinatown Defendants</u>

Plaintiffs are employees of two Joe's Shanghai restaurants, the Flushing location and the Midtown location, and allege that those restaurants violated the FLSA and the NYLL.  *See* FAC ¶¶ 25–32, 33–34, 113.  The FAC names as defendants the corporations that own three restaurants—the Flushing, Midtown, <u>and</u> Chinatown locations—as well as individual defendants which include alleged owners and managers at the Chinatown location.

Defendants move for judgment on the claims against the Chinatown Defendants: Shanghai Duplicate Corp., Lillian Liou, Cheng Kueng Liu, Yun Cai, John Zhang, and Terry Ho. They argue that, accepting the allegations of the FAC as true and construing them in favor of Plaintiffs, they still fail to state a claim that any of the Chinatown Defendants was an employer of any Plaintiff under FLSA and NYLL.  *See* Memorandum of Law in Support of Defendants' Motion to Dismiss First Amended Complaint, Dkt. No. 77 ("Def. Br.") 8–10.  The thrust of Defendants' claim is that because no plaintiff worked at the Chinatown location and no Chinatown Defendant is alleged to have managed labor relations at the Midtown or Flushing locations where Plaintiffs were employed, the Chinatown Defendants cannot be held liable for the labor law violations of Midtown and Flushing.

"The same standard applicable to Fed.R.Civ.P. 12(b)(6) motions to dismiss applies to Fed.R.Civ.P. 12(c) motions for judgment on the pleadings." *Bank of New York v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010) (citation omitted).  Thus, the Court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in [Plaintiffs'] favor."  *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).  Defendant's motion must be granted unless the Complaint includes "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* Likewise, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).  The ultimate question is whether "[a] claim has facial plausibility, [i.e., whether] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  In deciding Defendants' motion, the Court analyzes the factual allegations of the FAC without applying any principles of claim or issue preclusion.[3]

---

[3] Plaintiffs argue that Judge Ross's decision in *Jin v. Shanghai Original, Inc.*, 2018 WL 1597389 (Jul. 10, 2019), which dismissed similar claims against the Chinatown Defendants, is not preclusive on them. *See* Memorandum of Law in Opposition to Defendants' Motion to Dismiss the First Amended Complaint, Dkt. No. 87 ("Pl. Br.") at 10–11.  Because the pleadings themselves in this case do not establish an employer relationship sufficient to state a

4

The FLSA defines "employer" to "include[e] any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The FLSA's definition of "employer" includes "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." 29 USC 203(a), (d). "The Supreme Court has emphasized the 'expansiveness' of the FLSA's definition of employer." *Herman v. RSR Sec. Serv. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (quoting *Falk v. Brennan*, 414 U.S. 190, 195 (1973)). Thus, in determining whether a particular defendant is an employer, the court is not bound by the niceties of formal corporate relationships. It is required to look at the "economic reality," including "whether the alleged employer: (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and methods of payment, and (4) maintained employment records." *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984); *see Leal v. Masonry Servs., Inc.*, 2013 WL 550668, at *3 (E.D.N.Y. Feb. 12, 2013); *Chen v. TYT East Corp.*, 2012 WL 5871617, at *4 (Mar. 21, S.D.N.Y 2012); *Cannon v. Douglas Ellman LLC*, 2007 WL 4358456, at *4 (S.D.N.Y. Dec. 10, 2007). It is a question of functional control. Courts will also look at "the operational control exerted over employment and the individual's potential power, even if not exercised, over the employees." *Solis v. ZEP LLC,* 2020 WL 1439744, at *7 (S.D.N.Y. Mar. 24, 2020). Ultimately, "employment for FLSA purposes [is] a flexible concept . . . determined on a case-by-case basis by review of the totality of the circumstances." *Barfield v. N.Y.C. Health and Hospitals Corp.*, 537 F.3d 132, 141–42 (2d Cir. 2007).

In addition, under FLSA, multiple corporate entities can be liable as the "employer" under "a joint employer theory based on the theory that they operate as a single enterprise with significant interrelation of operations." *Apolinar v. R.J. Rest., LLC*, 2016 WL 2903278, at *4 (S.D.N.Y. 2016). "[C]ourts consider (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Id.* (quoting *Suarez v. 449 Rest., Inc.*, 29 F. Supp.3d 363, 367 (S.D.N.Y. 2014)); *Solis*, 2020 WL 1439744, at *7. Where the single-integrated-enterprise theory applies, courts may impose liability for a violation "not only on the nominal employer but also on another entity comprising part of the singe integrated employer." *Arculeo v. On-Sites Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005).

Plaintiffs fail to plead sufficient factual content that the Chinatown Defendants meet this definition of employer as to Plaintiffs to cross "the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted). Plaintiffs rely on the following allegations to support their claim that the Chinatown location operated as a single integrated enterprise with the Midtown location such that the employees of the latter should be considered employees of the former and that the Chinatown location can be held liable for the violations of the FLSA and NYLL alleged by the employees of the Midtown location:[4] (a) Joe's Shanghai shares a single website which lists the three restaurants, their

---

claim against the Chinatown Defendants, the Court does not and need not consider Plaintiffs' argument on preclusion.

[4] Plaintiffs appear to have abandoned their claim that the Chinatown location was part of a single integrated enterprise with the Flushing location. *See* Pl. Br. 8–10 (arguing that the Chinatown location is part of a single

locations, and their menus and says, "Our company so far ONLY has three branches in New York," FAC ¶ 73; (b) Si is a 50% shareholder of both the Midtown and Chinatown locations, FAC ¶ 48; (c) Si "opened each of the three Joe Shanghai locations of the Joe Shanghai 'Company,'" FAC ¶ 74; (d) Si "(1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at [each of the locations]," FAC ¶ 48; and (e)  "Joe's Shanghai transferred employees, including Plaintiffs, between locations," FAC ¶ 75.

Those allegations together or alone are insufficient to make any Chinatown Defendant a manager of employees at the Midtown location.  It is not uncommon for two or more businesses that are run independently and manage their labor relations independently to use a single website or a common name for marketing purposes.  That does not make each responsible for the labor law violations of the other.  As other courts in this Circuit have held, the use of a single website or common marketing for a group of separate business may establish that those businesses share a "common purpose," but those allegations do not establish "an interrelation of operations or centralized control of labor relations with plaintiffs' identified direct corporate employer" sufficient to hold one corporation liable for the FLSA violations of the other corporation.  *See Yeh v. Han Dynasty*, 2019 WL 633355, at *8 (S.D.N.Y. Feb. 14, 2019 (rejecting argument that restaurants were a single joint enterprise even though they shared "a centralized website which provides a common platform for menu information, reservations, online ordering and contact," among other things) (internal quotation marks omitted); *Kwan v. Sahara Dreams Co.*, 2018 WL 6655607, at *4 (S.D.N.Y. Dec. 19, 2018) ("While sharing a common website may be sufficient to infer common ownership, it does not suggest that Defendants shared centralized control over their employees."); *Apolinar*, 2016 WL 2903278, at *4; *Santana v. Fishlegs LLC*, 2013 WL 5951438, at *3, *8 (S.D.N.Y. Nov. 7, 2013) (dismissing a claim based on a theory that multiple restaurants were a single-integrated-enterprise notwithstanding that the restaurants, *inter alia*, were "advertised and marketed jointly on Defendants' website").  In *Apolinar*, for example, the court held that the description of the business conducted by a group of related corporate entities as "a family owned and operated New York Gourmet Delicatessen" was insufficient to make the entities a single integrated enterprise for purposes of the FLSA and NYLL.  *Id.* at *4.[5]

Likewise, the fact that the Midtown and Chinatown locations share a partial owner in the form of Si who has a 50% ownership in each does not make the Chinatown location responsible for the Midtown location's labor law violations under either the FLSA or NYLL.  The FAC alleges that the three restaurants have different owners.  The Midtown location is owned by Defendants Si (50%) and Solomon Si Liou (50%).  FAC ¶¶ 48, 56.  The Chinatown location is owned by Defendants Si (50%), Lillian Liou (25%), and Cheng Keung Liu (25%).  FAC ¶¶ 48, 62, 64.  The Flushing location is owned by Defendants Yiu Fai Fong (33.33%) and Tun Yee Lam (66.67%).  FAC ¶¶ 50, 52.  Moreover, "[a]llegations of common ownership and common

---

integrated enterprise with the Midtown location). In any event, any such claim would fail for the same reasons that the claim that the Chinatown and Midtown locations are part of the same single integrated enterprise fails.

[5] In *In Jin v. Shanghai Original, Inc.*, 2018 WL 1597389, at *1 (E.D.N.Y. Apr. 2, 2018), the court found that "[t]he website was created when Kiu Sang Si owned a part of all three restaurants, and has not been changed since for reasons of economy." Si ceased to be an owner of all three restaurants in 2013. *Id.* Plaintiffs here do not dispute those facts, which—in any event—are not necessary to the Court's decision.

purpose, without more, do not answer the fundamental question of whether each corporate entity controlled Plaintiffs as employees." *Lopez v. Acme Am. Envt'l Co., Inc.*, 2012 WL 6062501, at *4 (S.D.N.Y. Dec. 6, 2012). *See Solis*, 2020 WL 1439744, at *8; *Robles v. Argonaut Restaurant & Diner, Inc.*, 2009 WL 3320858, at *2 (S.D.N.Y. Oct. 9, 2009) (common ownership of two corporations by same shareholder does not establish single enterprise); *Chen v. 2425 Broadway Chao Restaurant LLC*, 2017 WL 2600051, at *4 (S.D.N.Y. June 15, 2017) (allegations that individual defendant is majority owner is not enough).

That Si opened each of the Joe's Shanghai locations does not establish that he manages and operates them today or that he did during the proposed class period. Si opened the Flushing location in 1994—26 years ago. He opened the Chinatown location in 1996 and the Midtown location in 1999. FAC, Ex 8. Whatever relationship Si had with the restaurants over two decades ago does not establish an interrelation of operations or centralized control of labor relations today.

That leaves only allegations (d), that Si "(1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at [the different locations]," FAC ¶ 48; and (e) that "Joe's Shanghai transferred employees, including Plaintiffs, between locations." FAC ¶ 75.

As to the first of those two claims, it is the paradigmatic "formulaic recitation of the elements of a cause of action" is insufficient to establish a claim for relief under *Twombly* and *Iqbal*. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). The facts actually pled establish that there are different kitchen managers for each location—defendant William Ko for the Midtown location, FAC ¶ 60, defendants Yun Cai and John Zhang for the Chinatown location, FAC ¶¶ 66, 68, and defendant Gui Bing Shi for the Flushing location, FAC ¶ 54. Plaintiffs make the identical allegations in the identical language as to all of the 12 individual defendants regardless of their role, where they worked, and whether they had ownership interest in a Joe's Shanghai entity and, if so, which one. *See* FAC ¶ 50 (Fong); ¶ 52 (Lam); ¶ 54 (Shi); ¶ 56 (Liou); ¶ 58 (Si); ¶ 60 (Ko); ¶ 62 (Liou); ¶ 64 (Liu); ¶ 66 (Cai); ¶ 68 (Zhang); ¶ 70 (Ho). The allegations mirror, and do not add factual content to, the *Carter* factors. They cannot make out a claim for relief, as numerous courts in this District have held on similar facts. *See Solis*, 2020 WL 1439744, at *8 (holding that allegations that recite the statutory factors in conclusory fashion are not sufficient to state a claim); *Chen*, 2017 WL 2600051, at *4 ("Plaintiffs' boilerplate recitation of the four *Carter* factors is not entitled to the assumption of truth, and therefore cannot give rise to a plausible inference that Wang is an 'employer'"); *Vasto v. Credico (U.S.A.) LLC*, 2016 WL 4147241, at *7 (Aug. 3, 2016); *Bravo v. Established Burger One LLC*, 2013 WL 554 9495, at *7 (S.D.N.Y. Oct. 8, 2013) (no single integrated enterprise where "Plaintiffs allege no specific facts, aside from the elements of the 'economic reality test,' to satisfy their pleading burden"); *Diaz*, 2010 WL 391280 at *4 (S.D.N.Y. Sept. 28, 2010) (finding "mere boilerplate allegations that an individual meets the various prongs of the economic reality test" insufficient); *Bravo v. Eastpoint Int'l*, 2001 WL 314622, at *2 (S.D.N.Y. Marc 30, 2001).[6]

---

[6] In *Jin*, 2019 WL 3244187, at *1, Judge Ross found that in 2014 and 2015, Si would use East Brother Corp.'s truck three days a week to deliver food to the Chinatown and Midtown locations. That Si was a supplier or participated in the supply of food does not make him a manager or employer of the personnel at the two restaurants. *See Lopez*,

Finally, Plaintiffs rely on the allegation that "Joe's Shanghai transferred employees, including Plaintiffs, between locations." FAC ¶ 75. That conclusory allegation would have some weight, if it were supported by factual content. The fact that a single manager transfers an employee from one location to another can add support to a claim that the two locations are not run independently but are interconnected. *See Yap v. Mooncake Foods, Inc.*, 146 F. Supp. 3d 552, 559 (S.D.N.Y. 2015). But the allegation here is not supported by the pleaded facts; it is undercut by them. According to the FAC, each of the plaintiffs worked at only a single location—either in Midtown or in Flushing. None worked in Chinatown and, more importantly, there is no claim that a defendant "transferred" any Plaintiff or any other Joe's Shanghai employee to or from the Chinatown location. *See* Defendants' Reply Memorandum of Law in Support of Motion to Dismiss First Amended Complaint, Dkt. No. 81 ("Reply") at 4–5.[7]

Plaintiffs rely on the District Court decisions in *Yap*, 146 F. Supp.3d. at 552, *Juarez v. 449 Restaurant, Inc.*, 29 F. Supp.3d 363 (S.D.N.Y. 2014), and *Bravo v. Est. Burger One*, 2013 WL 5549495 (S.D.N.Y. Oct. 8, 2013) to support their contention that the facts pled here are sufficient to establish a single integrated enterprise. However, none of those decisions supports that conclusion. Careful study of each demonstrates that the common feature in all three—entirely absent here—is an allegation of operational control, specifically an allegation that permits the inference that "the alleged employer possessed the power to control the workers in question." *Herman*, 172 F.3d at 139; *see Lopez*, 2012 WL 6062501, at *3.

In *Yap*, the court found that the plaintiffs plausibly alleged that four restaurants that were part of the Mooncake Foods Chain ("MFC") were a single integrated enterprise under FLSA and NYLL based on detailed factual allegations that the four restaurants shared a single Chief Executive Officer or President (defendant Peter Lee); that Lee would interview wait staff, manage the finances of the restaurants, and pay all delivery people for all MFC locations; that another officer managed the kitchen at all locations and would manage the delivery people including directing delivery people across all four MFC locations to fill in whenever a specific location was shorthanded; and that records for all delivery people across all locations were kept in a book and were interchanged among all MFC locations. *Yap*, 146 F. Supp. 3d. at 558–59. Although the court also noted that the four locations shared a single website and a single menu,

---

[7] 2012 WL 6062501, at *5 (allegation that all of the companies shared cleaning supplies is insufficient to make them a single integrated enterprise). Indeed, as noted above, *see supra* 3, Judge Ross also found that "[a]lthough they share a single name and website, the three locations of Joe's Shanghai are now independently owned and managed." *Jin*, 2018 WL 1597389, at *1, *quoted in Jin*, 2019 WL 3244187, at * 1.

[7] Plaintiffs ask the Court to take judicial notice of the findings of Judge Ross in *Jin.*, 2019 WL 3244187, but those findings undercut their argument. Judge Ross found that one worker (a kitchen worker) transferred from the Chinatown location to the Flushing location in 2015, and from the Flushing location to the Midtown location in 2016, but she rejected the contention that the worker's movements were directed by Si. *Id.* at *1 n.6. Judge Ross found that the plaintiff's efforts to establish that point were "belabored" and unavailing. *Id*. She characterized the evidence as supporting the proposition that "the restaurants may have occasionally recommended employees to one another" but concluded that such evidence did "not establish that each had control over the others' employment practices." *Id.* at *3. Another plaintiff in the *Jin* action also worked at the Midtown and Chinatown locations at different points in time, but there is no evidence that such employee was transferred. *See Robles*, 2009 WL 3320858 (noting that although a plaintiff had worked at two defendant restaurants successively, he "was not employed at both establishments simultaneously").

that evidence was not the basis for the court's decision but merely provided further support for it. *Id.*

In *Juarez*, 29 F. Supp.3d at 363, the court likewise concluded that the plaintiff plausibly alleged that four restaurants under nominally separate ownership formed a single integrated enterprise on detailed factual allegations absent here. Those allegations included that a single individual owned, managed, and oversaw operations at all of the defendant's diners; that the diners all maintained the same or similar interior décor, used the same or similar menus, and required non-exempt workers to wear the same uniform; that the diners shared common ownership and financial control; that the diners employed a single policy that permitted non-exempt workers to perform work at multiple locations without retraining; and that, although the plaintiff worked at three of the four locations, in every instance she spoke to the single manager about pay increases. *Id.* at 367–68. Although the court noted that two of the diners shared a website, its decision did not turn on that alleged fact.

Finally, in *Bravo v. Established Burger One LLC*, 2013 WL 5549495, at *8, the court found that the plaintiffs had plausibly alleged that all five locations of the Good Burger Restaurant chain operated as a single integrated enterprise where they "jointly advertised on the website[,] . . . marketed the restaurants as one entity, used the same menus at all the locations, moved employees and food among the restaurants, and paid the employees using the same payroll methods from a central office." In addition, the plaintiffs alleged that they worked at more than one and as many as four different Good Burger Restaurant locations, and that a single common manager allegedly "checked in" on more than one of the restaurants. *Id.*; *see also Tecoatzi-Ortiz v. Just Salad LLC*, 2019 WL 1585163, at *4 (S.D.N.Y. April 12, 2019) (applying single-integrated-enterprise doctrine against parent corporation of 24 franchise defendants based on allegations that "there is a common corporate and ownership structure, the defendants share employees based on necessity, the plaintiffs would deliver supplies to different Just Salad locations, Just Salad delivery drivers all had to adhere to common policies such as the delivery fee and uniform policies, and the defendants could hire and fire the plaintiffs.").

The hallmarks of functional control identified in each of these cases are absent here. Instead, this case is closer to *Apolinar*, 2016 WL 2903278, at *4, *Solis v. ZEP LLC*, 2020 WL 1439744, at *7, *Lopez.*, 2012 WL 6062501, and *Santana*, 2013 WL 5951438, at *1.

In *Apolinar*, the plaintiffs sued several corporate entities, each of which did business under the name "Toasties." The businesses had seven active locations, five of which were listed on the same Toasties website home page which described the business as "a family owned and operated New York Gourmet Delicatessen." 2016 WL 2903278, at *1. The plaintiffs alleged that, although the businesses were conducted under separate corporate names, all of them operated as a single enterprise by the same family—two twin men and their mother. The *Apolinar* plaintiffs alleged that the family members were in charge of all areas of the Toasties deli enterprise including the hiring and termination of workers, wage determinations, work schedules, type of work assigned, designated work load, and employment policy. The court nonetheless held that those allegations were insufficient to establish that the separate corporations had "an interrelation of operations or centralized control of labor relations with plaintiffs' identified direct corporate employer" sufficient to hold each of them liable under the

FLSA.  *Id*. at *4.  The court concluded that "[a]lthough plaintiffs ha[d] plausibly alleged, based on their allegations relating to the content of the Toasties website, that there existed common ownership and a common purpose," the plaintiffs had failed to "allege that the Moving Corporate Defendants had any sort of direct employer responsibility over them, such as the ability to hire or fire, or set work hours or job responsibilities."  *Id*.

In *Solis*, likewise, the plaintiffs alleged that two separate corporate entities—1431 Restaurant, Inc. and ZEP LLC—operated the restaurant at which the plaintiff worked as a joint or unified enterprise, that the two corporations were associated and joint employers, and that the two corporations jointly employed plaintiffs.  2020 WL 1439744, at *8.  The court held that such conclusory allegations were insufficient "to support the conclusions that 1431 Restaurant, Inc. and ZEP LLC had an interrelation of operations, centralized control of labor relations, common management, or common ownership and financial control over operations."  *Id.*

In *Lopez*, 2012 WL 6062501, employees of a company that cleaned commercial kitchen equipment, Acme Environmental, brought claims against all members of the Acme Group for FLSA and NYLL violations by Acme Environmental.  The corporations that were members of the Acme Group served a common clientele and operated out of a single location.  One of the companies installed refrigerators, another maintained and repaired commercial kitchen equipment, and yet another sold parts to the other corporations that were part of the Acme Group.  *Id.* at *1.  The four corporations shared a supply room and cleaning chemicals and had a common bookkeeper, accountant, and general manager.  *Id.*  The companies also had the same owners, who shared offices at the location of the Acme Group, and who Acme Environmental employees called the "Boss" and "Big Boss."  *Id.*  One of those owners hired three Acme Environmental employees but did not hire any of the plaintiffs.  *Id.*  The court held the allegations insufficient to establish that the four companies operated as an integrated enterprise.  "Allegations of common ownership and common purpose, without more, do not answer the fundamental question of whether each corporate entity controlled Plaintiffs as employees."  *Id.* at *4.  Because "none of the Corporate Moving Defendants had the power to hire the Plaintiffs or other members of Acme Environmental" and Plaintiffs did "not allege that any of the Corporate Moving Defendants supervised or controlled their work schedules of payments, [or] maintained the records of Acme Environmental's employees," *id.* at *5, the court found the allegations insufficient to plead the "relationship of control" necessary to make each member of the Acme Group responsible for Acme Environmental's alleged FLSA and NYLL violations.  *See also Santana*, 2013 WL 5951438 at *1, *8  (stating in dicta that application of the single-integrated-enterprise doctrine was not "warranted by the record before the Court" where employees of two restaurants owned and operated by David Burke as part of the David Burke Group sought to sue all members of the David Burke Group, even though the restaurants engaged in joint advertising and marketing, shared human resources and legal personnel, jointly solicited job applicants, and paid their employees with the same payroll methods).

The claims against Lillian Liou, Cheng Kueng Liu, Yun Cai, John Zhang, and Terry Ho are derivative of those against Shanghai Duplicate Corp.  Each is alleged only to have worked at the Chinatown location and to have had no relationship with the Midtown or Flushing locations or, more particularly, with the employees of the Midtown or Flushing locations, including Plaintiffs.  Lillian Liou and Cheng Kueng Liu are each 25% owners of the Chinatown location,

FAC ¶¶ 62, 64, Yun Cai and John Zhang are each kitchen managers at the Chinatown location, FAC ¶¶ 66, 68, and Terry Ho is described only as "[an] officer" of the Chinatown location.  FAC ¶ 70.  The only claim that they are liable under the FLSA and NYLL is based on the premise that the Chinatown location is liable.  Because Plaintiffs have not pleaded a plausible claim against the Chinatown location, the claims against these individuals must also be dismissed.  *See Apolinar*, 2016 WL 2903278, at *7; *Solis,* 2020 WL 1439744, at *7; *Lopez*, 2012 WL 6062501.

   2.   Defendants' Motion to Dismiss Claims Against Plaintiffs Lianqin Lu, Hui Zhen Huang, Juan Li, and Haihua Zhai for Lack of Jurisdiction.

   Plaintiffs Lianqin Lu, Hui Zhen Huang, Juan Li, and Haihua Zhai do not have timely FLSA claims.  None of them worked at a Joe's Shanghai restaurant during the relevant three-year lookback period.  *See* Def. Br. 10–11; *Bittencourt v. Ferrara Bakery & Cafe Inc.*, 310 F.R.D. 106, 116 (S.D.N.Y. 2015) ("Under the FLSA, the statute of limitations is three years for willful violations and two years for non-willful violations. . . . When willfulness is disputed, courts typically apply the three-year limitations period in defining the scope of a collective action.") (citing 29 U.S.C. § 255(a); *Hamadou v. Hess Corp.*, 915 F.Supp.2d 651, 668 (S.D.N.Y.2013).

   Plaintiffs argue that the Court has supplemental jurisdiction over the NYLL claims because they "concern the same issues of nonpayment of minimum wage and nonpayment of overtime as those raised by the remaining Plaintiffs."  Pl. Br 14.  The question presented is whether this Court has, and should exercise, jurisdiction over their NYLL claims.  The Court finds that it does have such jurisdiction and will not decline to exercise it.

   28 U.S.C. §1367(a) provides:

   (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within subject original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

   . . .

   (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if –

        (1) the claim raises a novel or complex issue of State law,

        (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

        (3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.[8]

Supplemental jurisdiction turns on whether the state law claims and the federal law claims arise from the "same 'common nucleus of operative fact.'" *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 332 (2d. Cir. 2011) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)). *See also Kirschner v. Klemons*, 225 F.3d 227, 239 (2d Cir. 2000) ("[Section 1367(a)] makes pendent party jurisdiction possible where the claim in question arises out of the same set of facts that give rise to an anchoring federal question claim against another party.").

Defendants argue that exercising jurisdiction would be either improper or imprudent on the grounds that events underlying the state and federal claims occurred at "a different and non-overlapping time period." Def. Br. 13. Thus, Defendants argue that the Court lacks supplemental jurisdiction over these Plaintiffs' state law claims, and that even if such jurisdiction is available, the Court should decline to exercise it. Def. Br. 10–13. In *Chen v. 2425 Broadway Chao Restaurant*, 2017 WL 2600051, at *5–6 (S.D.N.N. June 15, 2015), Judge Woods rejected the identical arguments. In *Chen*, thirteen plaintiffs filed a lawsuit asserting violations of the FLSA and NYLL, but the FLSA claims of seven of those plaintiffs were time-barred, leaving them only with NYLL claims. Defendants moved to dismiss those claims arguing that the court lacked supplemental jurisdiction and that it should decline to exercise such jurisdiction in the exercise of its discretion. Judge Woods ruled:

> The Court agrees with Plaintiffs that the Non-FLSA Plaintiffs' state-law claims are sufficiently related to the FLSA claims that they form part of the same case or controversy. Their claims involve the same issues of hours and payments for plaintiffs who were employed in the same jobs, doing the same work, during periods that overlap with many of the FLSA plaintiffs. Accordingly, supplemental jurisdiction exists over those claims.

*Id*. at *5; *see also Chen v. Street Beat Sportswear, Inc.*, 364 F Supp.2d 269, 277 (E.D.N.Y. 2015) (exercising supplemental jurisdiction over NYLL claims of plaintiffs whose FLSA claims were time-barred "pursuant to 28 U.S.C. 1367(a) given that the federal and state law claims derive from a 'common nucleus of operative fact'"); *Ouedraogo v. Durso Assocs., Inc.*, 2005 WL 1423308, at *2 (S.D.N.Y. June 16, 2005) (exercising supplemental jurisdiction over NYLL claims of plaintiffs whose FLSA claims were time barred because the claims "all share a basic common story" and "will involve overlapping testimony, depositions and documentation").

Judge Woods' reasoning is persuasive and applies here. Although Plaintiffs' federal claims are only for the period from 2016 to the present day, the FAC asserts in support of those claims a single "pattern and practice" of labor law violations, beginning as early as 1997 and continuing to the present day. *See* FAC ¶¶ 2, 87–159. The FLSA and NYLL claims involve the same issues of hours and payments for plaintiffs who were employed in the same jobs, doing the

---

[8] Subsection (b) is not relevant here.

same work, for the same employers.  The NYLL claims therefore arise out of the "same common nucleus of operative fact" as the FLSA claims.  *Montefiore*, 642 F.3d at 332 (internal quotation marks and citation omitted).  To the extent that Defendants ask the Court to decline to exercise supplemental jurisdiction, that request is denied.  This case is at its earliest stages and the federal claims will go forward.  Just as in *Chen*, none of the four bases under §1367(c) for declining to exercise supplemental jurisdiction applies.  *See* 2017 WL 2600051, at *6; *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir. 1998) ("[T]he discretion to decline supplemental jurisdiction is available only if founded upon an enumerated category of subsection 1367(c).").

Defendants cite *LaChapelle v. Torres*, 37 F. Supp. 672 (S.D.N.Y. 2014), for the proposition that because the NYLL and FLSA claims occurred at different times, they do not meet the standard for supplemental jurisdiction.  *LaChapelle* is distinguishable on the facts. *LaChapelle* involved a plethora of federal and state law claims arising out of an acrimonious relationship between an artist and his agent.  37 F. Supp.3d at 675–679.  Plaintiffs alleged trademark and copyright claims and a variety of state law claims, crossclaims, and counterclaims sounding in tort and contract.  *Id*.  Although the parties were the same, the factual bases of the federal and "many and varied" state law claims, *id*. at 680, were entirely different.  Not only were the claims temporally separated, but the conduct underlying the state and federal law was different.  *See, e.g.*, *id*. at 684 (the conduct underlying the state and federal claims was "entirely separate"); *id*. at 682–83 (resolving the state and federal claims "will require consideration of an entirely different set of facts"); *id*. at 685 ("Evidence relevant to [a state law claim] . . . has [no] overlap with the evidence necessary to prove or defend against Plaintiff's federal claims."). [9]

Not so in the instant case.  Plaintiffs allege a pattern and practice of employer misconduct that is similar in every legally relevant characteristic with respect to each plaintiff.  Indeed, it may well be necessary for Plaintiffs to establish that the defendants were engaged in such a pattern to satisfy the commonality and predominance class certification requirements.  *See* Fed. R. Civ. P. 23(b)(3) (requiring that, to certify a class, the court must find, *inter alia*, "questions of law or fact common to class members predominate over any questions affecting only individual members . . ."); *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) ("[P]redominance is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof,

_____

[9] *Wigand v. Flo-Tek, Inc.*, 609 F.2d 1028 (2d Cir. 1979), upon which Defendants also rely, is also distinguishable. There, the Court held that a federal claim for violations of the Securities Act of 1933 did not confer supplemental jurisdiction on the federal courts for a state law claim for breach of contract based on facts that arose after the effective date of the securities offering.  Unlike here, in *Wigand* there was no allegation of a pattern and practice of behavior underlying the state and federal claims.

Defendants also cite *Gonpo v. Sonam's Stonewalls & Art, LLC*, 2017 WL 9673710 (D. Mass Dec. 14, 2017).  There, a magistrate judge recommended that the District Court in Massachusetts did not have supplemental jurisdiction over Massachusetts state statutory and common law claims brought by individual plaintiffs whose FLSA claims were time-barred.  In so doing, however, the court noted that "federal courts with federal question jurisdiction over at least one plaintiff can exercise supplemental jurisdiction over plaintiffs who cannot present a federal question, but who can assert sufficiently related state law claims." *Id.* at *18.  The court also recognized that the inquiry into whether the court has supplemental jurisdiction is "'necessarily, a fact-intensive one that is unique to each case.'" *Id.* at *17 (quoting *Coyne v. Tr's of Dartmouth Coll.*, 2015 WL 1457900, at *2 (D.N.H. Mar. 30, 2015) (internal citations and quotations omitted)).  This Court reaches a different result than that recommended in *Gonpo* based on the allegations in this case.

and if these particular issues are more substantial than the issues subject only to individualized proof.'") (quoting *Catholic Healthcare W. v. U.S. Foodservice Inc.* (*In re U.S. Foodservice Inc. Pricing Litig.*), 729 F.3d 108, 118 (2d Cir. 2013)).

   3.   <u>Whether Plaintiffs can assert class claims based on representation by same counsel as in *Jin* case</u>

Finally, Defendants argue that Plaintiffs' counsel, Troy Law, PLLC ("Troy Law") should not be permitted to serve as class counsel in this case. The Court construes Defendants' argument as one to strike the class allegations under Federal Rule of Civil Procedure 23(d)(1)(D), rather than as one to disqualify Troy Law from representing Plaintiffs in their individual capacities, there being no basis presented for the latter form of relief. *See* Def. Br. 13–14. In essence, Defendants argue that, because the District Court in the Eastern District of New York ultimately determined that Troy Law would not provide adequate representation to the class in that case, the proposed class here—if also represented by Troy Law—would flunk the adequacy requirement of Rule 23. *See id.*; Order Decertifying the Class, *Jin v. Shanghai Original, Inc.*, 2018 WL 1597389 (July 10, 2019), Dkt. No. 181 ["Decertification Order"]; Fed. R. Civ. P. 23(a)(4).

The Court rejects Defendants' argument to strike the class allegations. After previously having found Troy Law adequate to represent a class comprised of workers employed by the Joe's Shanghai restaurant in Flushing, s*ee Jin*, 2018 WL 1597389, the Court in *Jin* ultimately decertified the class because it found that Troy Law was "no longer providing 'zealous, competent representation'" to that class. Decertification Order at 6 (quoting *In re Integra Realty Resources, Inc.*, 262 F.3d 1089, 1112 (10th Cir. 2001)). The court's findings were based on Troy Law's conduct and representation of the class in that case. Troy Law had filed a proposed witness list that included only four witness, only two of whom were class members and a third of whom (while not a class member) also would have offered testimony that "appear[ed] to undermine plaintiffs' class claim." *Id.* at 4. The court noted that calling additional class members was "crucial to the plaintiffs' case." *Id.* at 6. It also noted that Troy Law failed to adequately respond to the court's orders and had engaged in apparent attempts to delay trial. *Id.* In those circumstances, the court concluded that permitting the case to go to trial on a class basis, which would bind the absent class members, would "prejudice class members." *Id.* at 7.

At the same time, however, Troy Law has been appointed as class counsel in one ongoing case in the Eastern District of New York, *Zhang v. Wen Mei, Inc., et al.*, No. 14-cv-01647 (E.D.N.Y.). It is also class counsel for settlement purposes in *Rodpracha v. Pongsri Thai Restaurant Corp. et al.*, No. 14-cv-02541 (S.D.N.Y.) and *Zhu v. Wanrong Trading Corp.*, No. 18-cv-00417 (E.D.N.Y.).

In *Smith v. Bayer*, 554 U.S. 299, 317 (2011), the Supreme Court dealt with a similar issue—whether a decision not to certify a class under Rule 23 would bind purported class members and preclude certification of the same class in a subsequent action based on the same alleged facts. *Id.* at 314–15. The Court there suggested that the rulings in the first lawsuit might bind the same named plaintiff in a second lawsuit under principles of *res judicata* and law of the case, *see id.* at 313, but held that unnamed members of a purported but uncertified class are not bound by the preclusive effect of decisions in the case. Against the argument that such a finding

14

could lead to perpetual relitigation of class certification by different unnamed members, the court concluded that "the sometimes substantial costs of similar litigation brought by different plaintiffs" is mitigated in "our legal system generally . . . [by] principles of *stare decisis* and comity among courts." *Id.* at 317.

The Court need not decide whether Plaintiffs who were absent class members at the time of the decertification decision in *Jin* are bound by that decision, or how principles of comity might apply to a second lawsuit raising the same issue brought by such plaintiffs.

First, Defendants' motion is premature. Since the 2003 amendment of Rule 23, "the adequacy of class counsel now is analyzed under Rule 23(g) and not as part of Rule 23(a)(4)." 1 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 4:38 (16th ed. 2019). Rule 23(g), in turn sets forth the requirement that "a court that certifies a class must appoint class counsel" and lists the factors the court must consider and may consider in making that appointment. It is evident from the text of Rule 23(g) then that the time for considering adequacy of counsel is when (and if) the court certifies a class. The present motion is premature, as it is made before there has been class certification discovery and a motion for class certification.

Second, at that stage and even assuming the doctrine of issue preclusion binds those plaintiffs in the instant action who were members of the *Jin* class, issue preclusion applies only where, among other things, "the issues in both proceedings [are] identical." *Faulkner v. Nat'l Geographic Enters. Inc.*, 409 F.3d 26, 37 (2d Cir. 2005) (quoting *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986)); *see Herrera v. Wyoming*, 139 S. Ct. 1686, 1697 (2019) (issue preclusion applies to "'an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment'") (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748–749 (2001)); 18 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 4417 (3d Ed. 2020) ("In various ways and phrases, decisions defining the scope of issue preclusion all agree that it applies only when the same issue has been decided in one case and arises in another.").

The issue presented here is not the same as that presented in *Jin*. As Judge Ross's own decisions reflect, the determination that a counsel is adequate to represent a class is based on an analysis of class counsel's qualifications and experience in general (including in representing classes and in similar lawsuits) as well as a fact-specific analysis of the conduct of counsel in the lawsuit in which a class is to be certified and the resources counsel will commit to representing the class. *See* Fed. R. Civ. P. 23(g)(1)(A); 1 *McLaughlin on Class Actions* § 4:38 (commenting that "[c]ounsel will be judged in part on their performance in the case at hand, and if counsel's performance in the case engenders doubt as to counsel's competence or commitment, courts have not hesitated to intervene" and that "[c]ertification also may be denied based on proposed class counsel's mishandling of the pending suit"). A lawyer who is qualified by experience and education to represent an FLSA class may nonetheless prove herself to be inadequate based on her commitment, preparation, and work in the instant case. That appears to be exactly what Judge Ross concluded, and it does not preclude a finding of adequacy of counsel in this case.

This Court too will monitor counsel's performance in representing the putative class here and will take that performance into account, along with Judge Ross's findings in *Jin*, when and if

a motion for class certification is made.  But the decision whether counsel is adequate and therefore whether a class will be permitted to continue must await that motion and cannot be made now based only on the pleadings.


<u>CONCLUSION</u>


       For the foregoing reasons, the motion for judgment on the pleadings as to the claims against the Chinatown Defendants, namely Shanghai Duplicate Corp., Lillian Liou, Cheng Kueng Liu, Yun Cai, John Zhang, and Terry Ho, is GRANTED.  The motions to dismiss the NYLL claims for lack of subject matter jurisdiction and to strike class claims are DENIED.

       IT IS FURTHER ORDERED that Plaintiffs file a corrected complaint with properly numbered paragraphs no later than one week from the date of this Order.  The corrected complaint shall not contain any changes to the wording of the FAC; it shall only replace the current paragraph numbering with properly ordered numbers.  Defendants' time to answer the Complaint will run from the time the corrected complaint is filed.


       SO ORDERED.

Dated: May 11, 2020
     New York, New York                 _____
                                     LEWIS J. LIMAN
                            United States District Judge