UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__5/10/2022__
```

-----------------------------------------------------------------------X
                                          :

HUER HUANG, et al.,                        :

                  Plaintiffs,        :

                                     :         19-cv-7702 (LJL)

        -v-                     :

                                     :     OPINION AND ORDER

SHANGHAI CITY CORP, et al.,        :

                                   :

                Defendants.      :

                                   :
-----------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

      Named Plaintiffs Lianqin Lu, Gloria Perez Mendez, Clara Flores, Reyes Perez Guerrero, Aragon Cardoso Cruz, Raymundo Maximino, and Hai Hua Zhai (together, the "Named Plaintiffs") move, pursuant to Federal Rule of Civil Procedure 23(b)(3), to certify a class comprised of "[a]ll delivery persons, chefs, cooks, food preparers, and cleaning staff who were employed or are currently employed by Defendants during the six years immediately preceding the initiation of this action, or August 16, 2013, up to the date of the decision of the motion," Dkt. No. 175 at 1, to pursue claims under the New York Labor Law.  Named Plaintiffs also move for appointment of the Named Plaintiffs as Class Representatives and of Troy Law, PLLC and its attorneys John Troy, Aaron B. Schweitzer, and Tiffany Troy as Class Counsel.  Named Plaintiffs also ask for an order permitting them to circulate a notice of class action by direct mail and by publication to class members.  Dkt. No. 173.

      For the following reasons, the motion for class certification is denied.

**BACKGROUND**

## I.     The History of This Case

The first complaint in this action was filed on August 16, 2019 against four corporate defendants allegedly doing business as "Joe's Shanghai" and multiple individual defendants, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law ("NYLL"), §§ 190 *et seq*.  Dkt. No. 1.  The corporate defendants originally named in that complaint operated restaurants in Midtown, Manhattan; Chinatown, Manhattan; and Flushing, Queens.  *Id.*

An amended complaint (the "First Amended Complaint") was filed on October 8, 2019, Dkt. No. 17, and on March 6, 2020, the defendants moved for judgment on the pleadings with respect to the First Amended Complaint's claims against defendants associated with the Chinatown restaurant (the "Chinatown Defendants") and to dismiss the claims of certain plaintiffs for failure to state a claim and lack of subject matter jurisdiction and to dismiss the class action claims, Dkt. No. 75.  On May 11, 2020, the Court issued an Opinion and Order granting the motion for judgment on the pleadings of the Chinatown Defendants and denying the motions to dismiss the NYLL claims for lack of subject matter jurisdiction and to strike the class claims.  *Huer Huang v. Shanghai City Corp.*, 459 F. Supp. 3d 580 (S.D.N.Y. 2020).

A second amended complaint (the "Second Amended Complaint" or the "Complaint") was filed on May 21, 2020.  Dkt. No. 103.[1]  The Complaint brought claims against four corporate defendants—Shanghai City Corp, Shanghai Duplicate Corp, East Brother Corp, and Shanghai Original Inc.—which owned and operated a Joe's Shanghai restaurant in New York

---

[1] The Second Amended Complaint was first filed on May 18, 2020.  Dkt. No. 102.  A corrected Second Amended Complaint was filed on May 21, 2021.  Dkt. No. 103.  For ease of reference, the Court refers to the corrected Second Amended Complaint as the Complaint herein.

City, as well as associated individuals (collectively, "Defendants"). *Id.* Shanghai City Corp.
owned and operated a Joe's Shanghai restaurant, located on West 56th Street in Manhattan, New
York ("Midtown Restaurant"). Dkt. No. 103 ¶ 35. East Brother Corp. and Shanghai Original
owned and operated the Joe's Shanghai restaurant in Flushing, Queens, New York ("Flushing
Restaurant"). *Id.* ¶¶ 41, 44. Shanghai Duplicate Corp. owned and operated a Joe's Shanghai
restaurant in Chinatown, but Defendants were granted a motion for judgment on the pleadings
for the claims related to that restaurant and associated individuals. *See Huer Huang*, 459 F.
Supp. 3d at 597. Although the restaurants share a common origin and name, they are separately
owned and operated. *See id.* at 3; *see also Jin v. Shanghai Original, Inc.*, 2018 WL 1597389, at
*1 (E.D.N.Y. Apr. 2, 2018) ("*Jin I*") ("Although they share a single name and website, the three
locations of Joe's Shanghai are now independently owned and managed."); Dkt. No. 158 at 14.

Plaintiffs are former employees of one of two restaurants in New York City: the Midtown
Restaurant and the Flushing Restaurant. The plaintiffs in this action have changed over time.
Originally, eight plaintiffs brought this action: Huer Huang, Lianquin Lu, Gloria Perez Mendez,
Clara Flores, Reyes Perez Guerrero, Hui Zhen Huang, Juan Li, and Hai Hua Zhai, ostensibly on
behalf of themselves and other employees similarly situated. Each of those plaintiffs worked at
the Midtown Restaurant. Dkt. No. 1 ¶¶ 22–29. The First Amended Complaint added Aragon
Cardoso Cruz and Raymundo Maximino as plaintiffs.[2] Those two plaintiffs worked at the
Flushing Restaurant. Dkt. No. 17 ¶¶ 33, 34, 113. Counsel is the Troy Law Firm. The Second

---

[2] The First Amended Complaint and Second Amended Complaint referred to Maximino as
"Maximino Raymundo," *see* Dkt. Nos. 1, 103, and he is referred to in the record as both
"Raymundo Maximino" and "Maximino Raymundo." *See* Dkt. Nos. 126-2 (I-9 Form listing first
name as "Raymundo" and last name as "Maximino" and NYC Identification Card listing name
as "Raymundo Maximino"); 174-9 (affidavit of Maximino stating his name as "Raymundo
Maximino"); Dkt. No. 182-14 at 5 (deposition testimony of Maximino stating that his name is
"Maximino Raymundo Astudillo"). The Court will refer to him in this Opinion as "Maximino."

Amended Complaint contained the same ten plaintiffs named in the First Amended Complaint.
Dkt. No. 103.  In October 2020, the Court dismissed plaintiffs Huer Huang and Hui Zhen Huang
from the action for their repeated failure to attend their scheduled depositions, after the Court had
previously imposed sanctions on them and the Troy Law Firm for an earlier failure to appear for
depositions.  Dkt. Nos. 109, 158; *Huer Huang*, 2020 WL 5849099, at *18.  The Court also
awarded costs as sanctions for plaintiff Juan Li's failure to appear for depositions and then
dismissed her claims with prejudice after she failed to comply with Court's orders requiring her
to appear for depositions. *Huer Huang*, 2020 WL 5849099; Dkt. Nos. 158, 164.[3]  There are thus
seven remaining named plaintiffs in this action: Aragon Cardoso Cruz ("Cruz"), Raymundo
Maximino ("Maximino"), Hai Hua Zhai ("Zhai"), Lianqin Lu ("Lu"), Gloria Perez Mendez
("Mendez"), Clara Flores ("Flores"), and Reyes Perez Guerrero ("Guerrero").

As currently pleaded, the Complaint alleges failure to pay minimum wage and failure to
pay overtime at time and a half of the regular rate in violation of the FLSA, on behalf of the
employees of the Midtown Restaurant and a proposed FLSA collective.  Dkt. No. 103 ¶¶ 258–
261, 267–274.  It also alleges violations of certain provisions of the NYLL "on behalf of Plaintiff
and Rule 23 Class": (1) failure to pay minimum wage for the hours worked and failure to pay in
full "for some or all of the hours worked," *id.* ¶ 264; *see also id.* ¶¶ 262–266; (2) failure to pay
overtime, *id.* ¶¶ 275–279; (3) failure to pay spread-of-hours pay, *id.* ¶¶ 280–282; (4) failure to
provide meal breaks, in violation of NYLL § 162, *id.* ¶¶ 283–287; (5) failure to keep weekly
payroll records, in violation of New York Codes, Rules and Regulations ("NYCRR") § 146-2.1,
*id.* ¶¶ 288–292; (6) failure to provide time-of-hire wage notices, in violation of NYLL § 195-

---

[3] The Court previously held that Lianqin Lu, Hu Zhen Huang, Juan Li, and Hai Hua Zhai did not
have timely FLSA claims.  *Huer Huang*, 459 F. Supp. 3d at 592.

1(a), *id.* ¶¶ 293–297; and (7) failure to provide wage statements and paystub information, in violation of NYLL § 195-1(d), *id.* ¶¶ 298–301.  The Complaint also contains a claim for breach of an implied contract for reimbursement of all costs and expenses of delivery vehicles brought on behalf of plaintiff Zhai and "the Class."  *Id.* ¶¶ 302–311.

On October 1, 2020, the Court granted in part and denied in part plaintiffs' motion to have the case conditionally certified as a collective action under FLSA § 216(b), denying the request to certify a FLSA collective as to the employees of the Midtown Restaurant but granting the motion as to the employees of the Flushing Restaurant.  *Huer Huang*, 2020 WL 5849099.[4] On October 19, 2020, the Court issued an Opinion and Order that clarified that the conditionally certified class "includes 'the named [p]laintiff[s] and all nonexempt current and former employees of Defendants . . . who performed work as non-exempt, non-managerial [*kitchen workers*] from August 16, 2016 to present' at the Flushing Restaurant."  Dkt. No. 158 at 39 (alteration in original) (emphasis added) (quoting Dkt. No. 135 at 2); *see also Huang*, 2020 WL WL 6136186, at *1 (granting Defendants' request for clarification and limiting "[t]he Flushing conditional collective class . . . to nonexempt, non-managerial current and former kitchen workers at the Flushing Restaurant" and not workers who worked outside of the kitchen).

Thereafter, consents to join the class were filed on behalf of two employees of the Flushing Restaurant: Alberto Saldivia ("Saldivia")—who Defendants argue was not a kitchen worker, Dkt. No. 185 at ECF p. 12—and Bingbo Xu ("Xu").  Dkt. Nos. 167–169.  Thus, as currently composed, the case contains the seven Named Plaintiffs and these two opt-in plaintiffs

---

[4] No party identified that Plaintiffs had actually failed to plead FLSA claims on behalf of employees of the Flushing Restaurant.  Those claims are implicit in the facts pleaded in support of the NYLL claims.  The Court deems the Complaint to have been amended to add FLSA overtime claims on behalf of the Flushing Restaurant employees.

(together, "Plaintiffs").  Five of the Named Plaintiffs were employees of the Midtown

Restaurant.  Four of them (Lu, Mendez, Flores, and Guerrero) were kitchen workers.  The fifth,

Zhai, was a delivery man.  Two of the Named Plaintiffs—Maximino and Cruz—were employees

of the Flushing Restaurant, as were the two opt-ins, Saldivia and Xu.

## II.     The Troy Law Firm's Prior Litigation on Behalf of the Class Against Defendants

The "long and somewhat tortured" history of Plaintiffs' counsel's lawsuits against these

defendants is recounted in the Court's May 11, 2020 Opinion granting the motion for judgment

on the pleadings.  *See Huer Huang*, 459 F. Supp. 3d at 584.  That Opinion describes the "series

of FLSA and NYLL lawsuits against Joe's Shanghai restaurants filed in the state and federal

courts of New York."  *Id*.

In October 2016, the Troy Law Firm brought a putative class action lawsuit in the United

States District Court for the Eastern District of New York against principally these same

defendants asserting similar claims for violations of the FLSA and the NYLL on behalf of a

virtually identical class.  *Jin et al. v. Shanhai Original, Inc., et al.*, 16-cv-5633 (E.D.N.Y.).  The

Troy Law Firm moved multiple times to certify a collective action at the three locations of Joe's

Shanghai (Chinatown, Flushing, and Midtown); the Magistrate Judge initially granted

conditional certification as to the Flushing and Midtown locations but repeatedly denied the

conditional certification of the Chinatown location and denied the plaintiffs' request to amend

their complaint to include employees of the Chinatown location as named plaintiffs.  *See Jin I*,

2018 WL 1597389, at *4.  Three employees of the Chinatown location, who had filed notices of

consent to join the *Jin* action, thereafter filed a class action in state court alleging labor law

violations.  *Id.*  A few months later, they voluntarily dismissed the state-court action with

prejudice and filed a virtually identical action, again in the Eastern District of New York,

bringing the same NYLL and New York General Business Law counts against the same

defendants but adding two causes of action under the FLSA and one under 26 U.S.C. § 7434.
*See Lin v. Shanghai City Corp.*, 329 F.R.D. 36, 38 (S.D.N.Y. 2019).  The Chinatown employees

dismissed their action in the Eastern District of New York a few days after filing it and then filed

a virtually identical complaint in the Southern District of New York against the same defendants.

*Id.*  The Southern District action was thereafter dismissed pursuant to the "two-dismissal rule,"

which "exists primarily to prevent delays and harassment caused by plaintiffs securing numerous

dismissals without prejudice."  *Id.* at 39 (quoting 9 Charles Alan Wright et al., Federal Practice

& Procedure § 2368 (3d ed. 1998)).

Of particular relevance here, back in the Eastern District, in December 2017, after the

close of discovery in the *Jin* case, the Troy Law Firm moved to certify a class of employees of

the Midtown Restaurant and the Flushing Restaurant.  *See Jin I*, 2018 WL 1597389.  Judge Ross

granted that motion in part and denied it in part; she denied the motion to certify a class

comprised of employees of the Flushing Restaurant and the Midtown Restaurant, concluding that

the employees of the two restaurants did not share common issues and that the claims of

employees serving as named plaintiffs—who worked at the Flushing Restaurant—would not be

"typical" of the claims of employees of the Midtown Restaurant.  *Id.* at *9–10.  She pointed out

that "the factual record developed by discovery shows that there is no uniform employment

policy or practice across the Midtown and Flushing locations, and that these locations do not

share common ownership or management."  *Id.* at *6.

Judge Ross also explained: "While the Midtown and Flushing plaintiffs may all have

wage and hour claims—at least under the NYLL, if not the FLSA—they do not have the same

wage and hour claims.  Indeed, any question that could be posed would potentially generate

different answers between the two groups of plaintiffs."  *Id.* at *10.  She continued:

> [T]he plaintiffs' claims are not subject to classwide proof or resolution. Because the records shows that there was a separate employment policy at the Midtown and Flushing locations, the plaintiffs would be required to amass different evidence as to each.
>
> For essentially the same reasons, the named plaintiffs cannot meet the typicality requirement. . . . [T]he named plaintiffs' claims do not 'arise from the same practice or course of conduct,' as the claims of the Midtown employees. The Midtown employees' claims instead arise from a separate employment policy maintained by a separately owned and managed restaurant.

*Id.* (internal citation omitted). At the same time, however, Judge Ross also certified a class of employees of the Flushing Restaurant, concluding that the proposed Rule 23 class, which "include[d] all current and former non-managerial employees from October 7, 2010 . . . until the present" met all of the requirements of Rules 23(a) and 23(b)(3). *Id.* at *11–14. She also appointed the Troy Law Firm as class counsel. *Id.* at *15–16.

Over a year later, based on the conduct of the Troy Law Firm in the interim, Judge Ross decertified the class, finding that the Troy Law Firm was not adequate to serve as class counsel and could not provide adequate representation. *Jin v. Shanghai Original, Inc.*, 2019 WL 11816612 (E.D.N.Y. July 10, 2019) ("*Jin II*"). The court concluded that the Troy Law Firm was "no longer providing 'zealous, competent representation.'" *Id.* at *3 (quoting *In re Integra Realty Resources, Inc.*, 262 F.3d 1089, 1112 (10th Cir. 2001)). The court based that conclusion on a number of events—counsel failed to respond adequately to court orders, counsel attempted to delay the trial, and counsel indicated it only intended to call two class members as witnesses at trial. *Id.* Based on those facts, Judge Ross concluded that the prejudice that absent class members would suffer from inadequate representation was greater than the prejudice they would suffer from late decertification. *Id.* She directed that the plaintiffs' counsel provide a notice to members of the class advising them of their rights to pursue their individual claims and that the statute of limitations was no longer tolled. *Id.* at *4.

The first complaint in this action was filed one month later, originally naming as plaintiffs only employees of the Midtown Restaurant.

## DISCUSSION

Plaintiffs move to certify a class under Federal Rules of Civil Procedure 23(a) and 23(b)(3) comprised of "[a]ll delivery persons, chefs, cooks, food preparers, and cleaning staff who were employed or are currently employed by Defendants during the six years immediately preceding the initiation of this action, or August 16, 2013, up to the date of the decision of the motion" to pursue claims under the New York Labor Law. Dkt. No. 175 at 1. Defendants oppose the motion on timeliness grounds as well as on the grounds that Plaintiffs have not satisfied the requirements of Rules 23(a) and 23(b)(3). Defendants also briefly argue that the Tory Law Firm "should not be permitted to pursue a class action on behalf of Plaintiffs Cruz and Raymundo [Maximino]" given Judge Ross's earlier conclusion that the firm did not provide adequate representation as required by Rule 23(g)(4). The Court first outlines the requirements for class certification under Rules 23(a) and 23(b)(3). It then addresses Defendants' arguments with respect to timeliness and Rule 23.

## I.      Standards for Class Certification

"Plaintiffs seeking certification of a Rule 23(b)(3) damages class action must first establish numerosity, commonality, typicality, and adequacy of representation, and then predominance of common questions of law or fact and the superiority of a class action over other procedures." *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 512 (2d Cir. 2020) (citing Fed. R. Civ. P. 23(a), (b)(3)), *cert. dismissed*, 142 S. Ct. 639 (2021).

The numerosity inquiry focuses on whether the class is so large "that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Courts have long applied a presumption that a class of forty members is sufficiently numerous that joinder of all members would be

impracticable. *See Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993); *see also Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). But "numerosity" is not simply a numbers game. "Determination of practicability depends on all the circumstances surrounding a case, not on mere numbers. Relevant considerations include judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members." *Robidoux*, 987 F.2d at 936 (internal citations omitted).

The "commonality" inquiry depends upon there being "a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "[W]hat matters to class certification is not the raising of common questions . . . but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Barrows v. Becerra*, 24 F.4th 116, 131 (2d Cir. 2022) (quoting *Wal-Mart*, 564 U.S. at 350). "In wage cases, the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices." *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 69 (S.D.N.Y. 2018) (quoting *Spencer v. No Parking Today, Inc.*, 2013 WL 1040052, at *15 (S.D.N.Y. Mar. 15, 2013), *report and recommendation adopted*, 2013 WL 2473039 (S.D.N.Y. June 7, 2013)).

"Rule 23(a)(3)'s typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux*, 987 F.2d at 936; *see also Barrows*, 24 F.4th at 131

("Typicality requires that the claims of the class representatives be typical of those of the class, and is satisfied when each member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." (quoting *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001), *abrogated on other grounds by Wal-Mart*, 564 U.S. 338)).  "The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3).  The crux of both requirements is to ensure that 'maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'"  *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (internal citations omitted) (quoting *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982)).

"Adequacy of representation is evaluated in two ways: (1) by looking to the qualifications of plaintiffs' counsel; and (2) by examining the interests of the named plaintiffs."  *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 164 (S.D.N.Y. 2014) (quoting *Flores v. Anjost Corp.*, 284 F.R.D. 112, 128–29 (S.D.N.Y. 2012)).  "[T]wo factors generally inform [the inquiry]" of whether a named class representative is adequate under Rule 23: "(1) absence of conflict and (2) assurance of vigorous prosecution."  *Irvin v. Harris*, 944 F.3d 63, 71 (2d Cir. 2019) (quoting *Robinson*, 267 F.3d at 170).  "In evaluating [the adequacy] requirement, courts consider whether the class representatives are familiar with the action and 'whether they are of sufficient moral character to represent a class.'"  *Zivkovic*, 329 F.R.D. at 71–72 (quoting *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 125 (S.D.N.Y. 2011)).  "In addition, 'where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation,' certification of the class is not appropriate because the representative cannot act in

the best interest of the class." *Id.* (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000)).

Two more requirements must be satisfied before a class is certified under Rule 23(b)(3). First, common issues must predominate over individual issues. "The 'predominance' requirement of Rule 23(b)(3) 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Scott*, 954 F.3d at 512 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). The predominance requirement "is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *Id.* (quoting *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)). "The predominance inquiry is a core feature of the Rule 23(b)(3) class mechanism . . . . Where individualized questions permeate the litigation, those 'fatal dissimilarit[ies]' among putative class members 'make use of the class-action device inefficient or unfair.'" *In re Petrobras Secs.*, 862 F.3d 250, 270 (2d Cir. 2017) (quoting *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 568 U.S. 455, 470 (2013)). Second, a court must find that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "[T]he superiority determination involves, either explicitly or implicitly, a comparison of the class action—representative litigation—as a procedural mechanism to available alternatives." 2 Newberg on Class Actions § 4:64 (5th ed.).

Finally, "a court that certifies a class must appoint class counsel" at the same time it certifies the class, and the court is thus required to consider the adequacy of class counsel in its class certification decision. Fed. R. Civ. P. 23(g); *see also* 1 Newberg on Class Actions § 3:84

(5th ed.).  In determining whether class counsel should be appointed, a court must "address the mandatory factors set forth in Fed. R. Civ. P. 23(g)," *Kimber v. Tallon*, 556 F. App'x 27, 28 (2d Cir. 2014) (summary order), which require consideration of: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class," Fed. R. Civ. P. 23(g)(1)(A).  A court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).  Though the 2003 Amendments to Rule 23 "migrated the discussion of counsel's adequacy away from 23(a)(4)" and into Rule 23(g), "the analysis within Rule 23(g) 'builds on' the standards that courts developed in scrutinizing the adequacy of class counsel under Rule 23(a)(4)," 2 Newberg on Class Actions § 3:80 (5th ed.) (quoting Fed. R. Civ. P. 23(g) advisory committee notes), and "[c]ourts in the Second Circuit have continued to consider the adequacy of class counsel under Rule 23(a)(4) despite the 2003 Amendments," *Lever v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 164 n.16 (S.D.N.Y. 2017); *see also Seijas v. Republic of Argentina*, 606 F.3d 53, 57 (2d Cir. 2010) (explaining that the inquiry into whether "the representative parties . . . fairly and adequately protect the interests of the class . . . in part, considers the competency of class counsel and the existence of conflicts that might impair its representation").

"Rule 23 does not set forth a mere pleading standard."  *Wal-Mart*, 564 U.S. at 350.   "[A] party must not only 'be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact,' typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a).  The party must also satisfy through evidentiary proof

at least one of the provisions of Rule 23(b)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)

(internal citation omitted) (quoting *Wal-Mart*, 564 U.S. at 350).  A class action "may only be

certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a)

have been satisfied," *Falcon*, 457 U.S. at 161, and that they have been established by the

preponderance of the evidence, *see Teamsters Local 445 Freight Div. Pension Fund v.

Bombardier Inc.*, 546 F.3d 196, 201 (2d Cir. 2008) ("The preponderance of the evidence

standards applies to evidence proffered to establish Rule 23's requirements.").  "[F]ailure to

prove any element [of Rule 23] precludes certification."  *Ansari v. N.Y. Univ.*, 179 F.R.D. 112,

114 (S.D.N.Y. 1998).

     "The same class certification requirements apply to the certification of subclasses: 'a

court must assure itself that each subclass independently meets the requirements of Rule 23.'"

*Zivkovic*, 329 F.R.D. at 68 (quoting *Ramirez v. Riverbay Corp.*, 39 F. Supp. 3d 354, 362

(S.D.N.Y. 2014)).  Thus, the numerosity requirement applies to each subclass.  *See Meyers v.

Crouse Health Sys., Inc.*, 274 F.R.D. 404, 414 (N.D.N.Y. 2011); *see also Ramirez*, 39 F. Supp.

3d at 362; *Burka v. N.Y.C. Transit Auth.*, 110 F.R.D. 595, 601 (S.D.N.Y. 1986) ("When plaintiffs

attempt to certify two or more subclasses . . . each subclass and its respective representative

'must independently meet the requirements for maintenance of a class action.'" (quoting 7A C.

Wright & A. Miller, Federal Practice & Procedure at 191–92 (1972))).

     The standards for certifying a class under Federal Rule of Civil Procedure 23 "bear little

resemblance" to those for certifying a collective action under Section 216(b) of the FLSA.  *Scott*,

954 F.3d at 519.  "[T]he requirements for certifying a class under Rule 23 are unrelated to and

more stringent than the requirements for 'similarly situated' employees to proceed in a collective

action under § 216(b)."  *Id.* at 520.  For the court to conditionally certify a case as a collective

action under Section 216(b), it is sufficient there exist potential opt-in plaintiffs who are "similarly situated" to the named plaintiffs in that "they share one or more similar questions of law or fact material to the disposition of their FLSA claims." *Id.* at 521; *see also id.* at 516. Common issues need not predominate among members of the collective: "if named plaintiffs and party plaintiffs share legal or factual similarities material to the disposition of their claims, 'dissimilarities in other respects should not defect collective treatment.'" *Id.* at 516 (quoting *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1114 (9th Cir. 2018)).  There is no requirement that the number of potential opt-ins be numerous.  Nor are there requirements that the class action be superior to other available methods for adjudicating the dispute or that there be a representative who is adequate and whose claims are typical. *Id.* at 519 ("Section 216(b) has nothing comparable to Rule 23(b)(3)'s requirements of predominance or superiority.  And Rule 23's requirements of adequacy and typicality are intended to protect the due process rights of absent class members, which is not a consideration in a nonrepresentative action such as a collective action under § 216(b).").

## II.    Timeliness Challenge

Defendants first argue that the motion for class certification should be denied because it was not timely made. Dkt. No. 185 at 8.  Indeed, Plaintiffs' motion has come in relatively late, particularly given the long history of this case.  The Case Management Plan and Scheduling Order entered in this case on December 19, 2019 provided for all fact discovery to be completed by April 15, 2020.  Dkt. No. 57 at 2.  It indicated that "Plaintiffs intend to move for motion for conditional collective certification," *id.* at 4, but it did not mention the filing of a motion for class certification.  The deadline for the completion of all fact discovery was later extended to June 22, 2020, Dkt. No. 85, and then further extended to August 22, 2020, but only for the production of time cards and paystubs because of legibility issues related to Defendants' original production,

Dkt. Nos. 133–134.  When Plaintiffs moved for conditional certification of a FLSA collective on June 15, 2020, Plaintiffs did not mention that they might also move to certify a class under Rule 23.  Dkt. Nos. 117–119.  The depositions of the Named Plaintiffs and of Defendants concluded on July 8, 2020.  Dkt. No. 185 at ECF p. 6.  No parties have conducted discovery specifically addressed to class certification.  No parties have moved for summary judgment.  The final pretrial conference is scheduled for July 5, 2022, and trial is scheduled for July 11, 2022.  Dkt. No. 178.  The motion for class certification was filed on December 6, 2021, more than fourteen months after the close of fact discovery and more than seven months after completion of opt-in plaintiff discovery.[5]

Defendants argue that they have been prejudiced by the late filing of the motion. Discovery in the case has been focused on the Named Plaintiffs and the opt-in plaintiffs and not on the unnamed plaintiffs or on class certification, and Defendants submit that an order certifying the class would further delay the case, leading to briefing on additional issues including on the constitutionality of New York's regulations under 12 NYCRR § 146-3.5(b) for calculating the employee's regular hourly rate of pay.  Dkt. No. 185 at ECF p. 8–10.

Rule 23(c)(1) provides: "At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action."  Fed. R. Civ. P. 23(c)(1).  The Second Circuit has explained that "[a] motion for class certification should 'be denied [as untimely] only when the late timing of the determination may cause prejudice or unduly complicate the case.'"  *Action AG v. China North East Petroleum Holdings Ltd.*, 687 F. App'x 10 (2d Cir. 2017) (summary order) (quoting 7AA Wright & Miller,

---

[5] In the parties' joint status letter of November 12, 2021, Plaintiffs indicated that they intended to move for class certification; in that same letter, Defendants indicated that they would oppose the motion on grounds it was untimely.  Dkt. No. 171.

Federal Practice & Procedure § 1785.3 (3d ed.)).  In particular, when a defendant has notice that

the plaintiffs will likely seek certification and the filing of a motion for class certification is "not

so unexpected as to prejudice the defendants," it is error to deny a motion for class certification

on timeliness grounds.  *Id.* at 13.

The Court rejects the argument it should deny the motion as untimely.  Each of the

complaints filed by plaintiffs in this action indicated prominently that plaintiffs intended to seek

class status.  *See* Dkt. Nos. 1, 17, 103; *see also Action*, 687 F. App'x at 10 (vacating denial of

class certification motion where "defendants had ample notice that the action was a putative class

action because the caption and prayer for relief in Action's prior complaints indicated it intent to

seek class status"); *In re Doria/Memon Disc. Stores Wage & Hour Litig.*, 2017 WL 4541434, at

*4 (S.D.N.Y. Oct. 10 2017) (holding that, because plaintiffs' complaint "describe[s] its

allegations as s 'Class Action' with 'Class- and Collective-Wide Factual Allegations'" and

plaintiffs had moved for collective certification for their FLSA claims, defendants had notice that

class certification motion might be filed).  Defendants indicated their understanding that

Plaintiffs might seek class status by moving early in this action for an order striking the class

allegations on the grounds that the Troy Law Firm should not be permitted to pursue a class

action. Dkt. Nos. 75–77.  On April 3, 2020, Plaintiffs opposed that motion and argued that it was

premature. Dkt. No. 87 at 15–16.  Plaintiffs wrote: "Although courts are obligated under Rule

23(c)(1) of the Federal Rules of Civil Procedure to determine whether to certify a class at 'an

early practicable time,' courts are permitted to delay ruling on whether to certify the class until

sufficient discovery is taken in order to determine whether the prerequisite[s] for Rule 23 have

been satisfied."  *Id.* at 16.  In its May 11, 2020 Opinion and Order, the Court denied Defendants'

motion as premature, noting that it had been "made before there has been class certification

discovery and a motion for class certification." *Huer Huang*, 459 F. Supp. 3d at 596.  There is nothing in Plaintiffs' response to that motion or in the Court's Order with respect to it that could have given Defendants comfort that a class certification motion would not be made.  And on June 15, 2020, Plaintiffs moved to conditionally certify a FLSA collective action; that motion did not ask for class certification, but the first page of the notice of motion stated in bold: "**29 U.S.C. § 216(b) COLLECTIVE ACTION & FED. R. CIV. P. 23 CLASS ACTION**."  Dkt. No. 117. Those filings were sufficient to put Defendants on notice that Plaintiffs might file a motion for class certification and to place some responsibility on Defendants—if they were concerned about the timing of the motion—to raise the issue with the Court before the motion was made; the motion could not have been entirely unexpected.

Defendants argue that the Case Management Plan and Scheduling Order "indicated" that Plaintiffs did not intend to make a motion for class certification and that Defendants believed that Plaintiffs would not seek to certify a class because of "the difficulty—and ultimate class decertification—Mr. Troy faced while attempting to maintain, manage and represent a class in the *Jin* case which involved similar claims and issues against the Flushing Restaurant."  Dkt. No. 185 at ECF pp. 8–9.  That argument, however, is undermined by two relevant facts:  First, *after* the filing of the Case Management Plan and Scheduling Order, Defendants were apparently sufficiently concerned about the prospect that Plaintiffs would move for class certification that they filed a motion designed to prevent Plaintiffs from doing so.  And second, in response to that motion by Defendants, and even after the "difficulty" the Troy Law Firm had in the *Jin* case, Plaintiffs' counsel argued that they should not be foreclosed from making a class certification motion notwithstanding the ruling in the *Jin* case.

Defendants have a reasonable argument that they would be entitled to additional discovery if a class were to be certified and that the certification of a class would delay the case. By waiting until well after the close of discovery to ask to make this motion, Plaintiffs have prevented Defendants from taking such additional discovery and thus may have prejudiced the Defendants; Plaintiffs have also interfered with the Court's schedule, and the Court observes that the conduct of counsel smacks of gamesmanship. But the Court has discretion whether to deny the motion as untimely, and here the better exercise of that discretion is not to deprive absent putative class members of the opportunity to obtain relief on grounds of timeliness alone. If that were the only issue, the Court would be prepared to reopen discovery to permit Defendants to depose the Named Plaintiffs on, among other things, their qualifications to serve as class representatives. The slight delay that would be necessary to permit Defendants to brief any additional legal issues would not be so great as to prejudice the Defendants or to significantly interfere with the Court's calendar.

## III.    Merits Challenge

Defendants also oppose the motion for class certification on the merits. They argue that Plaintiffs have not sustained their burden on any of the requirements necessary to certify a class—numerosity, commonality, adequacy, typicality, predominance, or superiority. They also argue that the class definition is overly broad.

### A.    The Record on Class Certification

Plaintiffs support their motion by declarations of the seven Named Plaintiffs, the two opt-ins, and individuals who delivered food for the Midtown Restaurant, and by the list of members of the Flushing collective provided by Defendants. Those who submitted declarations and worked at the Midtown Restaurant include four of the Named Plaintiffs—Lu, Mendez, Flores, and Guerrero—who worked in the kitchen, Dkt. Nos. 174-5, 174-6, 174-8, 174-10, as well as one

Named Plaintiff—Zhai—and five others who worked as delivery men, Dkt. Nos. 174-7, 174-11 to 174-15.  Five persons who worked at the Flushing Restaurant also submitted declarations, two of whom—Cruz and Maximino—are Named Plaintiffs, and two of whom—Saldivia and Xu— are opt-ins.  Cruz was a dishwasher, *see* Dkt. No. 174-3; Maximino was a soup-dumpling chef and an assistant chef, *see* Dkt. No. 174-9; Saldivia was a busboy whose responsibilities included restocking the refrigerator, cleaning dishes, and helping to prepare rice, *see* Dkt. No. 174-2; and Xu was a kitchen worker, Dkt. No. 174-4.  The fifth employee of Flushing Restaurant who submitted a declaration was a kitchen helper and "steamer" named Qun Cheng.  *See* Dkt. No. 174-16.

In their declarations, the employees make a variety of complaints about their working conditions.  The declarations from the deliverymen at the Midtown Restaurant are relatively uniform: they generally worked forty hours a week and generally no more than eight hours a day and were paid a flat rate.[6]  They all make the common complaint that they never received wage statements and were required to pay for the cost of purchasing and maintaining their bikes and delivery vehicles.  They each list other delivery people whom they know who worked at the Flushing Restaurant, but those individuals generally have already submitted declarations.  There are only approximately three people whom they identify who have not submitted declarations, one of whom is identified only as "Malaysian Man."  Dkt. No. 174-7 at 6   They note that there were approximately seven delivery people who worked for the Flushing Restaurant.

---

[6] Most of the deliverymen worked nine hours on Sunday.  One deliveryman worked forty-five hours a week for a period of time when he was doing additional work at the restaurant (Dkt. No. 174-11); another deliveryman worked eleven hours on one of the days of the week but never worked more than forty hours in a week (Dkt. No. 174-15).

The declarations from the four kitchen workers at the Midtown Restaurant differ from the declarations of the delivery men and, to some extent, differ from one another.  With one possible exception (Flores), each of the Midtown Restaurant's kitchen workers who submitted declarations worked in excess of forty hours a week without being paid overtime.  These kitchen workers did not receive weekly wage statements.  Two of them also declare they did not receive time of hire notices.  *See* Dkt. Nos. 174-6, 174-10.  Some of them worked in excess of eight hours a day, but none declare that they worked ten or more hours in a shift.  In addition, none of them assert that they were required to purchase their own tools of the trade.

The declarations from the five workers at the Flushing Restaurant—two of whom are Named Plaintiffs and all of whom worked in the kitchen in some capacity—are generally consistent with one another.  Dkt. Nos. 174-2 to 174-4, 174-9, 174-16.  They also allege some facts similar to those alleged by the kitchen workers at the Midtown Restaurant but that differ from the facts alleged by the delivery men at the Midtown Restaurant.  Without exception, each of the five states that he or she was required to work more than forty hours a week without being paid overtime and was required to work shifts of more than ten hours without being paid spread-of-hours pay.  They also allege that they did not receive wage statements, and some allege that they did not receive time of hire notices.  One alleges that he received payment in cash in an envelope that misstated the amount of the cash.  Dkt. No. 174-3.

Defendant submits three declarations in opposition to the motion for class certification. Defendant William Ko ("Ko") was the assistant manager of the Midtown Restaurant from 2009 to 2011 and the manager of that restaurant from 2011 until it closed in June 2019; he declares that there were three distinct areas of operation at the Midtown Restaurant, each of which was subject to different hours and received different pay: (1) kitchen workers; (2) dining room staff;

and (3) delivery men.  *See* Dkt. No. 184.  First, many kitchen workers generally worked in excess of forty hours a week and were paid at or above the hourly minimum wage plus hourly overtime at time and a half the regular hourly rate for hours in excess of forty hours per week, and they did not receive tips.  *Id.* ¶ 4.  Second, dining room staff were either paid at or above the hourly minimum wage with tip credit plus overtime at time and a half the regular rate for hours worked above forty hours per week and received tip credit and or were paid minimum wage and overtime without tip credit.  *Id.* ¶ 5.  Third, delivery men were paid a regular hourly wage, taking a tip credit allowance against the minimum wage, and would not work more than forty hours per week; they were required to sign a "written notice of pay rate and pay day in English and their native language stating their regular hourly rate of pay, the amount of the tip credit allowance taken against minimum wage and the hourly overtime rate at time and a half with tip credit."  *Id.* ¶ 6.  Ko declares that during the entire period from 2013 through June 2019, the Midtown Restaurant employed a total of twelve deliverymen.  *Id.* ¶ 8.  Ko explains that the working conditions of deliverymen differ from that of the kitchen staff, *id.* ¶ 7, and the dining room staff, *id.* ¶ 12.

Ko also points out discrepancies among the deliverymen at the Midtown Restaurant, as well as among the kitchen workers at the Midtown Restaurant.  As to the deliverymen, he points out that, according to Zhai's deposition testimony, Zhai's two hours of "side work" occurred during his morning working hours and not during his breaks and could not have resulted in his working more than forty hours per week, and he was thus not entitled to overtime pay.  *Id.* ¶ 9.  This differs from the overtime claims of other deliverymen, who say they performed side work during their breaks and consequently worked more than forty hours per week, entitling them to overtime pay.  *Id.*  Ko also states that three of the deliverymen claim that their non-tipped work

exceeds two hours or 20% of their workday, which gives rise to individualized factual issues,[7] *id.* ¶ 10, that Zhai received a higher tip credit allowance than other deliverymen, *id.* ¶ 11, and that after Zhai, Midtown paid its deliverymen a higher hourly rate with a lower tip credit allowance, *id.*

As to the Named Plaintiffs who worked in the kitchen in the Midtown Restaurant, Ko points to Judge Ross's opinion in *Jin*, which found that one of the current Named Plaintiffs testified that she was paid at least the legal minimum wage plus overtime, signed payroll records, received notices of pay rate and pay day, and that the payroll records that the Midtown Restaurant kept were accurate, *id.* ¶ 15, and that she also makes a claim unique to herself that she was paid extra to wrap wantons during her break, *id.* ¶ 30.  He also declares that another Named Plaintiff testified that she was paid overtime at the proper rate for pay over forty hours per week. *Id.*

Ko further states that in or about June 2019, prior to the closing of the Midtown Restaurant, deliverymen presented claims for spread of hours pay allegedly owed, and the Midtown Restaurant accepted those claims and paid the employees in full.  *Id.* ¶ 39.

Tun Yee Lam a/k/a Peter Lam ("Lam") is the sole shareholder of the corporation that owns the Flushing Restaurant and was the general manager of the restaurant from 2017 until it closed in March 2020.  Dkt. No. 183 ¶¶ 1–2, 9.  Lam states that, from the perspective of management, there were two separate areas of the Flushing Restaurant—the kitchen and the dining room.  *Id.* ¶ 10.  All of the kitchen workers were paid at or above the hourly minimum

---

[7] The 20% figure is significant because of the "80/20 Rule" under the FLSA and the NYLL, under which employers are precluded from applying a tip credit to employees who spend two hours or more (NYLL) or over 20% of his or her shift (the NYLL and the FLSA) completing non-tip-producing work.  *See Adonias v. Al Horno Lean Mexican Kitchen Inc.*, 2018 WL 4007643, at *8 (Aug. 22, 2018).

wage plus overtime at time and a half the regular rate for all hours worked above forty hours per week. *Id.* By contrast, the dining room staff, which includes busboys, were tipped workers. *Id.* ¶ 11. They were either paid at or above the hourly minimum wage with tip credit plus overtime at time and a half the regular hourly rate for hours worked above forty hours per week with tip credit or were paid minimum wage and overtime without tip credit. *Id.* He also states that it has been the policy of the Flushing Restaurant to require all employees to sign a notice of pay rate in English and in their native language and to give a copy of the notice of pay rate to the employee and to maintain accurate payroll records and to pay spread of hours pay to employees whose workday ended more than ten hours after he or she began his or her workday. *Id.* ¶ 15.

Lam also responds to the allegations made by various of the Flushing Plaintiffs. He attaches to his declaration time cards and payroll records for Cruz, Maximino, Saldivia, and Xu, which he declares show that they were all "paid at or above the hourly minimum wage plus overtime at time and a half the regular rate for all hours worked above forty hours per week," and states that "[t]he restaurant also paid spread of hours." *Id.* ¶ 24. He also states that a mistake that affected Cruz and Maximino's pay, leading them to be paid under the applicable minimum wage rate and affected the calculation of their overtime and spread-of-hours pay, was corrected and those employees were paid the corrected amounts and had signed corrected payroll records to reflect this. *Id.* ¶ 25.

### B. Certification of a Class Comprised of Flushing Restaurant and Midtown Restaurant Employees

Plaintiffs frame their motion as one for certification of a class of all delivery persons, chefs, cooks, food preparers, and cleaning staff who were employed or are currently employed by Defendants, regardless whether they were employed at the Flushing Restaurant or at the Midtown Restaurant.

That motion is denied substantially for the reasons stated by Judge Ross in *Jin I*, as well as by this Court in its decision on the motion for conditional certification of a FLSA collective action.   As explained above, in *Jin I*, Judge Ross concluded: "While the Midtown and Flushing plaintiffs may all have wage and hour claims—at least under the NYLL, if not the FLSA—they do not have the same wage and hour claims.   Indeed, any question that could be posed would potentially generate different answers between the two groups of plaintiffs."   *Jin I*, 2018 WL 1597389, at *10.   She also noted that "the plaintiffs' claims are not subject to classwide proof or resolution.   Because the records shows that there was a separate employment policy at the Midtown and Flushing locations, the plaintiffs would be required to amass different evidence as to each."   *Id.*   Thus, she concluded, "[f]or essentially the same reasons, the named plaintiffs cannot meet the typicality requirement. . . . [T]he named plaintiffs' claims do not 'arise from the same practice or course of conduct,' as the claims of the Midtown employees.   The Midtown employees' claims instead arise from a separate employment policy maintained by a separately owned and managed restaurant."   *Id.*

In its Opinion granting in part and denying in part Plaintiff's motion for conditional certification of a FLSA collective action, the Court concluded that "employees of the Midtown Restaurant are [not] similarly situated to employees of the Flushing Restaurant."   *Huer Huang v. Shanghai City Corp*, 2020 WL 5849099, at *7 (S.D.N.Y. Oct. 1, 2020), *clarified on denial of reconsideration sub nom. Huang v. Shanghai City Corp*, 2020 WL 6136186 (S.D.N.Y. Oct. 19, 2020).   "The Flushing Restaurant and the Midtown Restaurant operated under separate management and separate ownership.   Although they share a common name and a common history, they are distinct operations run by distinct legal entities and different individuals."   *Huer Huang*, 2020 WL 5849099, at *7.   "[T]he Flushing and Midtown Restaurants are separately and

independently owned, managed, and operated and there is no centralized control over employment relations in the two restaurants." *Id.* The Court further explained that:

> the nature of the violations and the parties bringing claims in each of the two restaurants are different. Midtown Restaurant employees say nothing in their affidavits about the Flushing Restaurant; nor do Flushing Restaurant employees say anything about the Midtown Restaurant. . . . No facts are alleged that would support the existence of a common policy across restaurants.

*Id.* Plaintiffs do not dispute any of those holdings or offer any new evidence that would cause the Court to come to a different conclusion.

It follows that Flushing Restaurant employees cannot be members of the same class as Midtown Restaurant employees, and the claim of a Flushing Restaurant employee that he was a victim of unlawful employment practices by the management of that restaurant is not "common" to that of a Midtown Restaurant employee that she was a victim of the policies of that restaurant. The point is highlighted by Plaintiffs' submissions in support of class certification. The Midtown Restaurant employees assert fundamentally different claims than the Flushing Restaurant employees. Although both sets of claims might arise under the same New York law, the "determination of [the] truth or falsity [of the claim of a Midtown Restaurant employee would not] resolve an issue that is central to the validity of . . . the claims [of a Flushing Restaurant employee] in one stroke." *Wal-Mart*, 564 U.S. at 350. It would be legally irrelevant to that claim.

### C.   Certification of a Class of Midtown Restaurant Employees

The Court has discretion to form a subclass when the proposed class fails the requirements of Rule 23. *Ramirez*, 39 F. Supp. 3d at 362 ("In ruling on a motion for class certification, courts have discretion to create additional classes or split a class into subclasses." (internal quotation marks and alterations omitted)); *Consol. Rail Corp.*, 47 F.3d at 483 (explaining that a "district court has ample discretion under current class-action law to fashion

suitable relief . . . by establishing subclasses").  The exercise of that discretion would not help Plaintiffs here.

Plaintiffs' submission fails to satisfy the numerosity requirement with respect to the Midtown Restaurant employees.  As to the Midtown Restaurant, Plaintiffs submit declarations from employees who worked in the kitchen at that restaurant and employees who worked as deliverymen.  The two sets of employees are entirely differently situated; they were each managed by separate managers and subject to a separate schedule and separate pay system.  Delivery personnel were managed by Ko and Baofu Yan, Dkt. No. 184 ¶ 6; they worked no more than forty hours a week; and they performed tipped work and were paid minimum wage and overtime with a tip credit.  Kitchen employees were generally managed by the head chef, with final say by Ko in employment matters, Dkt. No. 184 ¶ 4; they routinely worked more than forty hours a week; and they were not tipped.  Their complaints are different, and the evidence that would be used to evaluate those complaints is different.  A class comprised of employees of the Midtown Restaurant who worked in either the kitchen or as a delivery person would fail the commonality and predominance inquiries.  The commonality question in wage cases frequently turns upon whether "the defendants had a common policy or practice of unlawful labor practices." *Zivkovic*, 329 F.R.D. at 69.  Plaintiffs have submitted no evidence that there was a common policy or practice between the delivery people on the one hand and the kitchen employees on the other hand.  Because of such dissimilarities, in order for either set to proceed collectively under Rule 23, they would have to proceed as separate subclasses: Midtown Restaurant kitchen workers and Midtown Restaurant deliverymen.  The Court thus proceeds to analyze the numerosity question separately with respect to the kitchen workers and with respect to the delivery people.

With respect to the kitchen workers, Plaintiffs rely exclusively on declarations from employees who worked in the Midtown Restaurant kitchen, and they do not submit estimates of the numbers of kitchen worker employees. But those declarations do not establish numerosity. One of the declarants, Mendez, names only one other person who worked in the kitchen and "suffered the same practice and policy of Defendants:" Flores. Dkt. No. 174-6 ¶ 24. But Flores is already a Named Plaintiff, and she does not identify any other member of the kitchen staff. Another Named Plaintiff, Lu, who identifies herself in her declaration as a "packer," mentions five people with whom she is familiar—Wang Shi Fu was a "miscellaneous worker in the basement," and his main responsibilities are said to have included "cutting vegetables, preparing meat and ingredients," Dkt. No. 174-8 ¶¶ 25, 28; Li Juan[8] and Chen worked as "packers," *id.* ¶¶ 25, 39, 47; A Cang was an oil wok chef, *id.* ¶¶ 25, 56; and AK worked as a manager, *id.* ¶¶ 25, 64. Viewing the declaration generously, she identifies that there are perhaps three persons who are members of the kitchen staff who are not already Named Plaintiffs or have had their claims dismissed with prejudice. And Guerrero lists two persons who were dishwashers, but one of those is Flores. Dkt. No. 174-10 ¶ 20. Thus, from the certifications, there are perhaps four persons who were members of the kitchen staff who are not already Named Plaintiffs or who have not been dismissed from this action.

---

[8] The "Li Juan" identified in Lu's declaration appears to be the same "Juan Li" who was dismissed from this action for failure to appear for her depositions. *See* Dkt. No. 1 ¶¶ 124–140 (identifying Juan Li as a "packer" employed at the Midtown Restaurant who was employed from 2012 until sometime in 2014 and generally worked for a total of forty-nine hours and eight minutes per week); Dkt. No. 174-8 ¶¶ 25, 37–73 (identifying Li Juan as a "packer" who worked at the Midtown Restaurant who was employed from 2012 until sometime in 2014, worked for approximately forty-nine hours per week, and who worked a nearly identical schedule to the "Juan Li" identified in the complaint at Dkt. No. 1).

Plaintiffs also rely upon declarations from the delivery people.  Those declarations indicate that there were, at most, seven delivery people.  Defendants submit the declaration of Ko, the sole shareholder of the corporation that owns the Midtown Restaurant and the manager of that restaurant.  He declares that during the entire period from 2013 through June 2019, there were only twelve persons employed as deliverymen at the Midtown Restaurant.  Dkt. No. 184 ¶ 8.  In this case, six of the twelve persons are either Named Plaintiffs or have filed a declaration in support of the motion for class certification.

"A party seeking class certification . . . must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart*, 564 U.S. at 351.  "Courts will generally decline to certify classes comprising fewer than approximately 25 members absent extraordinary circumstances." *Sanchez v. New York Kimchi Catering, Corp.*, 320 F.R.D. 366, 374 (S.D.N.Y. 2017) (quoting Joseph M. McLauglin, *McLaughlin on Class Actions* § 4:5 (13th ed., 2016)); *see also Martinez v. Funsan K. Corp.*, 2018 WL 1090188, at *2 (S.D.N.Y. Feb. 26, 2018) (same).  Those persons who have not submitted declarations and who are putative members of the class are "limited and identifiable." *Perechu v. Flaum Appetizing Corp.*, 2021 WL 1725629, at *1 (E.D.N.Y. Apr. 6, 2021) (denying certification of settlement class) (quoting *Pa. Pub. Sch. Emps. Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014)); *see also Pa. Pub. Sch. Emps. Ret. Sys.*, 772 F.3d at 120 (affirming denial of certification of class of over 100 members where the putative class "was limited and identifiable").  Some of those who have submitted declarations have indicated that they know of others who have not submitted declarations.  There has been no showing that it "would be time intensive to contact the [remaining subclass members] to discuss representation." *Perechu*, 2021

WL 1725629, at *1.  Plaintiffs have not shown extraordinary circumstances or any reason why joinder of the additional members of the proposed class would be impracticable.

A court may find that the numerosity requirement is satisfied based on something other than "mere numbers" if the *Robidoux* factors are satisfied.  But Plaintiffs have made no showing that the class members are geographically dispersed.  *Cf. Martinez*, 2018 WL 1090188, at *3 ("[I]t is doubtful that the class is geographically dispersed, as all potential class members worked for the same Manhattan liquor stores.").  Nor have they showed that the limited financial resources of the class members would prevent them from joining this suit as party plaintiff—no additional resources would be required for them to file a notice of joinder and become an active member of the suit rather than an absent class member of the lawsuit.  This also is not a case in which "putative class members are unlikely to bring individual actions because of fear of retaliation or other adverse consequence arising out of the ongoing relationship with the defendant."  1 McLaughlin on Class Actions § 4:6 (18th ed.)  The Midtown Restaurant has long been out of business, and the employees of the Midtown Restaurant thus have no ongoing relationship or prospect of one and no basis for fear of retaliation.  "Plaintiffs fail to establish why proposed class members could not join this case."  *Martinez*, 2018 WL 1090188, at *4 (denying motion to certify a class of between fifteen and nineteen employees).

The Court would reach the same conclusion that a class cannot be certified even if it there were common and predominant questions such that the class could include both kitchen workers and delivery people.  In that instance, the class would include slightly more class members, but it would still not establish numerosity.  A class of twenty or fewer—ten of whom are either already class members or have filed declarations and could easily join—does not establish numerosity.

Finally, Plaintiffs have not shown that there is an adequate class representative who could serve the interests of the absent class members. "The adequacy of the proposed class representative . . . directly implicates the due process rights of absent class members who will be bound by the judgment." *Gordon v. Sonar Capital Mgmt. LLC*, 92 F. Supp. 3d 193, 198 (S.D.N.Y. 2015) (citations omitted). Thus, a class representative should "not simply lend his name to a suit controlled entirely by the class attorney," *In re Monster Worldwide, Inc. Secs. Litig.*, 251 F.R.D. 132, 135 (S.D.N.Y. 2008), and should provide a significant enough role in the litigation to "fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a), including "against the possibly competing interests of the attorneys," *Baffa v. Donaldson, Lufkin, & Jenrette Secs. Corp.*, 222 F.3d 52, 61 (2d. Cir. 2000). Mendez, Lu, and Guerrero simply state: "I sincerely hope that this Court allows me to represent the interests of my co-workers in this action. These Defendants exploited me and my co-workers, and it is my hope that we will be permitted to recover wages that we are owed." Dkt. No. 174-8 ¶ 70 (Lu's declaration); Dkt. No. 174-10 (Guerrero's declaration); Dkt. No. 174-6 ¶ 30 (Mendez's declaration). Flores does not say even that. *See* Dkt. No. 174-5 (Flores' declaration).

### D.   Certification of a Class of Flushing Restaurant Employees

The Court concludes that Plaintiffs have met the numerosity requirement with respect to a Flushing Restaurant subclass. In support of their motion, Plaintiffs include a list of forty-six employees who they say were identified as working at the kitchen of that restaurant for the three-year period of the collective action. *See* Dkt. No. 174-17; *see also* Dkt. No. 188 at 4 ("Defendants in this action had previously identified forty-six (46) cooks and kitchen workers who worked at Defendants' Flushing Restaurant over the past three (3) years . . . ."). Plaintiffs reasonably argue that. if forty-six employees were employed for three years, there must be even a greater number of employees who worked for that restaurant during the six-year time period

31

relevant to the NYLL claims.  The Court observes that the list submitted by Plaintiffs appears to contain at least seven individuals who appear not to have worked since 2010 or earlier, outside of both the three-year lookback period that is permitted under the FLSA and the six-year statute of limitations period allowed under the NYLL.  *See* Dkt. No. 174-17.  The list also contains two individuals who appear to have ceased working between August 16, 2013 and August 16, 2016, which is relevant insofar as Plaintiffs contend that the number of employees who worked during the FLSA collective period—August 16, 2016 to August 16, 2019—bears on the likely number of employees who worked during the six-year NYLL lookback period.  *See id.*[9]  There are therefore only thirty-seven employees on the list provided by Plaintiffs who appear to have worked during the FLSA collective period and thirty-nine who appear to have worked during the six-year lookback period provided by the NYLL—the relevant time period for this class.  Even if this list includes the relevant Plaintiffs and thus Defendants have shown that it does not include forty or more relevant persons, Plaintiffs have represented that this list reflects the kitchen employees who worked at the Flushing Restaurant over the past three years.  Assuming that is so, the Court finds persuasive the Plaintiffs' argument that there must have been additional employees who worked during the six-year period but not during the three-year period, thus bringing the number of relevant individuals above the forty that is presumptively sufficiently numerous.  *See Jin I*, 2018 WL 1597389, at *11 ("Since there have been 35 employees at this location in the past three years, it is almost certain that there have been over 40 workers in the past six years.").

---

[9] Some relevant entries appear to have the start and end dates reversed, *see, e.g.*, Dkt. No. 174-17 at line 12 (listing start date as 2016-06-13 and end date as 2009-03-17); the Court understands the later date to be the employment end date.

Defendants note that there were only two opt-ins into the Flushing collective and argue that one of those opt-ins—Saldivia—was a busboy and thus not a proper member of the collective.  Those numbers do give the Court some pause.  But to paraphrase Judge Droney, just because potential class members fail to join a FLSA collective action, it does not follow that they would also elect "to opt-out of the Rule 23 class."  *Scott v. Aetna Servs., Inc.,* 210 F.R.D. 261, 267 (D. Conn. 2002) (finding numerosity with 281 potential class members and only twenty-two opt-ins); *see also Meyers v. Crouse Health Sys., Inc.*, 274 F.R.D. 404, 414 (N.D.N.Y. 2011) ("Courts in the Second Circuit . . . continue to assess numerosity based on the number of proposed class members rather than the number of opt-ins."); *Niemiec v. Ann Bendick Realty*, 2007 WL 5157027, at *6 (E.D.N.Y. Apr. 23, 2008) (concluding that numerosity was met where records showed about 127 employees that could be members of the class action but only ten opted in to the FLSA collective action and noting that "there are other cases within this circuit supporting a finding of numerosity despite a low number of opt-in plaintiffs when certain mitigating factors are present"); *cf. Noble v. 93 Univ. Place Corp.,* 224 F.R.D. 330, 342 (S.D.N.Y. 2004) (finding numerosity met where there were several hundred potential class members and only three opt-ins because of evidence suggesting employees failed to join due to fear of reprisal in joining FLSA collective action).

Even though the Court concludes that the numerosity requirement is met, Plaintiffs have not established that the class would be adequately represented either by counsel or by a class representative.  As noted above, Judge Ross found in July 2019 that the Troy Law Firm was an inadequate representative for a class of employees of the Flushing Restaurant.  She concluded that counsel was "failing to 'fairly and adequately represent the interests of the class.'"  *Jin II*, 2019 WL 11816612, at *3 (quoting Fed. R. Civ. P. 23(g)(4)).  She also gave specific examples of

the ways in which the Troy Law Firm had violated its duties to that same group of people.  The Troy Law Firm seeks to represent a virtually identical class in this case.

In *Smith v. Bayer Corp.*, 554 U.S. 299 (2011), the Supreme Court held that an unnamed member of a proposed but uncertified class was not bound by principles of the law of preclusion by an earlier order denying a motion for class certification brought by another member of the proposed class.  The Court reiterated that, as a general matter, "only parties can be bound by prior judgments."  *Id.* at 313.  The Court ruled that unnamed members of a proposed class did not fall within the "discrete and limited exceptions" that permit nonparties to be bound because the Court had not certified a class and thus no properly conducted class action existed at any time in the litigation.  *Id.* at 312–13.  The Court reasoned that applying principles of preclusion to an unnamed member of a proposed but not certified class would "authorize preclusion 'shorn of Rule 23's] procedural protections.'"  *Id.* at 315 (quoting *Taylor v. Sturgell*, 553 U.S. 880, 901 (2008)).  Thus, the earlier court's determination on the motion of one member of the proposed class that common issues did not predominate and that a class could not be certified would not bind another member of the class from making similar arguments in the later case.  The protection against "relitigation of many issues, as plaintiff after plaintiff after plaintiff (none precluded by the last judgment because none a party to the last suit) tries his hand at establishing some legal principle or obtaining some grant of relief" would lie only in the "principles of *stare decisis* and comity among courts [that exist] to mitigate the sometimes substantial costs of similar litigation brought by different plaintiffs."  *Id.* at 315; *see also Smentek v. Dart*, 673 F.3d 373, 377 (7th Cir. 2012) ("The rule urged by the defendants in this case that the denial of class certification bars the certification of the same or a similar class in a suit by a member of the same class as the previous suit … would contradict the holding of *Smith v. Bayer Corp.*"); *Frank v.*

34

*Crawley Petroleum Corp.*, 992 F.3d 987, 999 (10th Cir. 2021) (explaining that *Smith v. Bayer Corp.* held that "the denial of class certification in an earlier case could [not] preclude a request for class certification in a new putative class action brought by a different plaintiff against the same defendant").[10]

At an earlier stage in this case, in May 2020, the Court addressed Defendants' argument that Judge Ross's finding should preclude the Troy Law Firm from representing the class in this case.  At that point, only two employees of the Flushing Restaurant had joined the case as a plaintiff, and it was unclear whether a class certification motion would be made or, if it were made, what would be the precise composition of any class the Troy Law Firm would seek to represent.  The Court concluded at that point that the argument was premature—no class discovery had been taken and no class certification motion was pending.  *Huer Huang*, 459 F. Supp. 3d at 596.  The Court also noted the Supreme Court's dictum that the risk of repetitive litigation might be ameliorated by application of the "principles of *stare decisis* and comity among courts." *Id.* (quoting *Smith*, 564 U.S. at 317).  However, the Court concluded that it would not strike the class allegations.  Judge Ross based her decision in part of a "fact-specific analysis" of the conduct of the Troy Law Firm in her case, and the Court stated that it would "monitor counsel's performance in representing the putative class here and will take that performance into account, along with Judge Ross's findings in *Jin*, when and if a motion for class certification is made." *Id.* at 15–16.  Plaintiff's motion—which, shorn of the putative class of Midtown Restaurant employees, seeks to represent nearly the identical class that Judge Ross

---

[10] Though *Smith v. Bayer* spoke in terms of the denial of certification, there is authority for the proposition that the same principles apply when a class is decertified because in that case, it was never "properly conducted."  *See Thorogood v. Sears, Roebuck and Co.*, 678 F.3d 546, 552 (7th Cir. 2012).

found the Troy Law Firm inadequate to represent in the *Jin* case—now raises the issue of the effect to be given to her decision and whether counsel is adequate in this case.

"The doctrine of collateral estoppel, or issue preclusion, bars parties 'from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding.'" *Brandon v. NPG Records, Inc.*, 840 F. App'x 605, 607 (2d Cir. 2020) (summary order) (quoting *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288 (2d Cir. 2002)).  Where the preclusive effect of a prior federal judgment is at issue, federal law applies.  *Id.*  "Under federal law, '[c]ollateral estoppel applies when: "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party [against whom collateral estoppel is being asserted] had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits."'"  *Id.* (quoting *Marvel Characters, Inc.*, 310 F.3d at 288–89).  "[T]he identicality standard does not require either that the two cases have the same scope or that they involve the same causes of action," but rather, it is met when "the *issues* are identical.  *Bifolck v. Philip Morris USA Inc.*, 936 F.3d 74, 82 (2d Cir. 2019).  The "final judgment" necessary for the purposes of issue preclusion "includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect."  Restatement (Second) of Judgments § 13.

The principles of preclusion at this point prevent the Troy Law Firm from representing the nearly identical class here that Judge Ross determined that firm was inadequate to represent in *Jin*.  First, the issue now is the same in this case as it was in that case: whether the Troy Law Firm could fairly and adequately represent the interests of the class of employees at the Flushing Restaurant.  While the decertified class in *Jin* and the putative Flushing Restaurant subclass here

are not identical, they are overlapping in large degree: in *Jin*, the class was comprised of "all current and former non-managerial employees from October 7, 2010—six years prior to the filing of the complaint—until the present," *Jin I*, 2018 WL 1597389, at *11; here, the relevant class is comprised of kitchen workers in the Flushing Restaurant who have been employed since August 16, 2013, Dkt. No. 175.  In short, it is now clear that the class in this case would largely be a subset of the originally certified class in *Jin.*  The claims as to which the Troy Law Firm would represent the employees are identical.  The employees in both allege that they were paid a flat rate of pay that violated the NYLL insofar as it did not comply with minimum wage requirements or account for overtime or spread-of-hour pay and that they did not receive time-of-hire notices that detailed their pay day or pay rate, also in violation of the NYLL.  *See Jin I*, 2018 WL 1597389, at *11; Dkt. No. 103; *see also Jin v. Shanghai Original, Inc.*, 16-cv-5633 (E.D.N.Y.), ECF No. 1 ¶¶ 73–123 (bringing claims for violation of: (1) the minimum-wage provisions of the FLSA, (2) the minimum-wage provisions of the NYLL, (3) overtime provisions of the FLSA, (4) overtime provisions of the NYLL, (5) spread-of-hours provisions of the NYLL, (6) meal-period provisions of the NYLL, (7) record-keeping requirements of the NYCRR, (8) time-of-hire wage-notice requirements of the NYLL, (9) pay-stub requirements of the NYLL, (10) 26 U.S.C. § 7434, related to fraudulent filings of tax returns, and (11) New York General Business Law § 349, related to deceptive acts and practices); Dkt. No. 103 ¶¶ 258–311 (bringing the same claims as one through nine in the *Jin* action and further (1) alleging that "Defendants had a policy and practice of refusing to pay Plaintiffs in full . . . for some or all of the hours they worked" in violation of the FLSA, for certain Named Plaintiffs and the FLSA Collective, and the NYLL for "Plaintiffs and the Rule 23 Class" and (2) bringing a claim for breach of implied contract for reimbursement of costs and expenses of electric delivery vehicle on behalf of Zhai

and "the Class").  The *Jin* complaint contains all of the same causes of action as it relates to the

Flushing employees, with one minor difference: the *Jin* complaint alleges that "Defendants had a

policy and practice of refusing to pay the statutory minimum wage to Plaintiffs, and the

collective action members, for all of the hours they worked," *Jin*, 16-cv-5633 (E.D.N.Y.), ECF

No. 1 ¶ 79, while the Complaint in this action contains that same allegation and the allegation

that plaintiffs were not paid "minimum wages in the lawful amount for hours worked," Dkt. No.

103, ¶¶ 264–265.  This difference is not enough to escape the preclusive effect that Judge Ross's

opinion has on the Troy Law Firm's attempts to serve as class counsel to the nearly identical

class— whether the Troy Law Firm could serve as an adequate representative for absent class

members who assert NYLL claims and who worked in the kitchen in the Flushing Restaurant

between August 16, 2013—the beginning of the class in the instant action—and July 10, 2019—

the date that the class action in the *Jin* action was decertified, *see Jin II*, 2019 WL 11816612—

has thus already been decided by Judge Ross; the firm could not.

Second, the principles of preclusion apply to the Troy Law Firm which, at least with

respect to the question of its own adequacy as class counsel, "'assume[d] control' over the

litigation in which th[e] judgment was rendered."  *Taylor v. Sturgell*, 553 U.S. 880, 895 (2008)

(quoting *Montana v. United States*, 440 U.S. 147, 154 (1979)).  Because it has had "'the

opportunity to present proofs and argument,' [it] has already 'had his day in court' even though

[it] was not a formal party to the litigation."  *Id.* (quoting Restatement of Judgments § 39,

comment *a*); *see also United States v. Davis*, 906 F.2d 829, 833 (2d Cir. 1990) ("[P]ursuant to

the doctrine of collateral estoppel, a non-party to an action can be bound by the determination of

issues decided in an action if it 'controls or substantially participates in the control of the

presentation on behalf of a party.'" (quoting Restatement (Second) of Judgments § 39)).  As

putative class counsel and then as class counsel, the Troy Law Firm was in a position to control the "evidence" that was put before Judge Ross regarding its own qualifications and abilities and the "legal theories" that would bear on its ability to continue to represent the class.  *See Algie v. RCA Global Comms., Inc.*, 891 F. Supp. 839, 852 (S.D.N.Y. 1994).  It was based on its own arguments and its own conduct—and not that of a person it did not control—that Judge Ross determined it was inadequate and that the due process rights of class members would be compromised by its continued representation.  The Troy Law Firm thus had a full and fair opportunity to litigate the question whether they could fairly and adequately represent the interests of the class, and it would not be unfair to bind the Troy Law Firm to the prior outcome. *See  Taylor*, 553 U.S. at 895; *see also Montana*, 440 U.S. at 154 (explaining that the interests implicated in preclusion principles applied to parties "are similarly implicated when nonparties assume control over litigation in which they have a direct financial or proprietary interest and then seek to redetermine issues previously resolved").

This case is thus fundamentally unlike *Smith v. Bayer Corp.*, which involved the question whether a person who was not a party to an earlier case would be permitted to advance arguments for the certification of a class because a prior party—with whom it had no pre-existing relationship—sought similar relief and was denied it.  The later litigant was, for all intents and purposes, a stranger to the earlier case; the Court concluded that its rights should not be compromised by orders issued in a case of which it might not even have been aware.  In this case, however, it cannot be said that the Troy Law Firm was a stranger to Judge Ross's determination in *Jin* that it was inadequate to represent the class.  Although the Troy Law Firm itself was not a party, it had a right to be heard and was heard, and it had an interest in the determination whether its representation was adequate.  Judge Ross determined that the interests

of the absent class members would be compromised and not advanced by the Troy Law Firm's continued representation of them; the interests of those absent class members in this case likewise will not be compromised but also will be furthered if the Troy Law Firm is not in a position to bind them in connection with the outcome of this case.

None of the three potentially relevant differences between the *Jin* case and the instant case alters the Court's conclusion or would render the application of preclusion principles unfair. The three differences are that the proposed class in this case extends to a slightly later date than class that was the subject of the decertification opinion in *Jin I*; that the Complaint frames a NYLL claim as a failure to pay for all hours in addition to a failure to pay minimum wage instead of simply a failure to pay minimum wage for all hours worked; and that Judge Ross based her decision on the conduct of the Troy Law Firm in her courthouse.  The doctrine of collateral estoppel does not require "total identity between the particular matter presented in the second action and that presented in the first" in order for the *issue* in both actions to be the same. Restatement (Second) of Judgments § 27, comment *c*.  Issue preclusion may apply even if there are factual differences underlying the issues where those differences are "of no legal significance."  *United States v. Stauffer Chem. Co.*, 464 U.S. 165, 172 (1984) (applying issue preclusion where a party sought to "litigate twice . . . an issue arising . . . from virtually identical facts" and the "factual differences" were "of no legal significance").  Where there is a lack of total identity between the matters in the first and second action, a court considering whether the issues are nonetheless the same may consider whether the claims in the two proceedings are closely related, whether there is a substantial overlap between the evidence and argument in the first proceeding, whether the issues involve the same rule of law, and whether there are no changed or different circumstances.  Restatement (Second) of Judgments § 27, comment *c*; *see*

*also* Wright & Miller, Federal Practice & Procedure § 4417 ("The possibility that new facts may surround continuation of the same basic conduct should not defeat preclusion unless it is shown that the new facts are relevant under the legal rules that control the outcome."); *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 157 (2015) (citing Restatement (Second) of Judgments § 27, comment *c* for the proposition that the "'issue' must be understood broadly enough 'to prevent repetitious litigation of what is essentially the same dispute'").  Thus, the fact that the class period in this case extends slightly further into the future than that in the *Jin* case or that the claims are not framed in the precisely identical language is irrelevant when those facts are immaterial to the adequacy of the Troy Law Firm to represent the interests of the class.

In addition, the law of preclusion may admit of exceptions where, for example, the party against whom preclusion is sought could not have obtained review of the judgment as a practical matter, or there has been an intervening change in the applicable legal context, or there is a clear and convincing need for a new determination because of the potential adverse impact of the determination on the interests of persons not themselves parties in the initial action.  *See* Restatement (Second) of Judgments § 28.

None of those circumstances apply here.  The two cases involve the same claims involving the same law, and there are no asserted changes or different circumstances that would be material.  The Troy Law Firm bases its application here solely on its credentials as a law firm—the same type of information that was before Judge Ross.  Nor is there a "compelling" showing of unfairness that would demonstrate a "clear and convincing need" for a new determination of the issue to serve the public interest or because of a potential adverse impact of the determination on persons not parties to the *Jin* action.  *See In re Napco Graphic Arts, Inc.*, 83 B.R. 558, 562 (E.D. Wis. 1988) (explaining that exception to issue preclusion that it should not

apply when there is a potential adverse impact on persons that are not parties "should only be applied in rare cases" and should not be applied where the retroactivity of a lien had been decided notwithstanding the fact that new employees were involved later); *In re Graven*, 138 B.R. 587, 589 (W.D. Mo. 1992) (declining to apply collateral estoppel "even if the . . . elements . . . were fully met" where only one defendant was party to prior action and the issue to be determined would necessarily have an adverse effect on the property of parties who had not had a full and fair opportunity to litigate).  There is no indication it would further the public interest for counsel to be able to repetitively litigate its adequacy to represent a class.  *Cf. Herrera-Castanola v. Lynch*, 644 F. App'x 759, 760 (9th Cir. 2016) (estopping government from making an argument would be contrary to the intent of Congress and would thus have an "adverse impact of the determination on the public interest); *Handley v. Chase Bank U.S.A., N.A.*, 2013 WL 1942818, at *5–6 (N.J. App. Div. May 13, 2013) (holding that litigant cannot avoid the consequences of preclusion where the record "fails to demonstrate that there has been, or is likely to be, a 'potential adverse impact on the determination on the public interest or the interest of persons themselves not parties in the initial action," where the dispute was "an entirely private matter, with no overtones beyond the confines of their litigation").  To the extent that there are new circumstances based on the conduct of the Troy Law Firm in this case that could bear on adequacy, those circumstances counsel against a finding that the Troy Law Firm is adequate and not in favor of it.  *See Gaylord Entertainment Co. v. Gilmore Entertainment Grp.*, 187 F. Supp. 2d 926, 942 (M.D. Tenn. 201) ("[C]ollateral estoppel is inapplicable if there are *material* changed circumstances since the date of the initial court determination." (emphasis added)); *cf. Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 745 F. Supp. 2d 1359, 1371–72 (S.D. Fl. 2010) (finding no changed circumstances to bar to operation of issue preclusion in

trademark case where position in the marketplace and consumer perception was unchanged notwithstanding plaintiff's contention that the litigation "involve[d] a different region, a different time, and different consumers").  As Judge Ross also concluded, the interests of the persons not before the Court as parties in her case and in this case would be compromised—and not furthered—by an order permitting the Troy Law Firm to represent them.

This conclusion thus is consistent with the principles of *Smith v. Bayer Corp.*  A determination that a previously unnamed member of a proposed class can make a class certification motion notwithstanding the earlier failure of a similar motion made by another member of the class respects the due process rights of each proposed class member—the second litigant's rights to argue numerosity, commonality, typicality, adequacy of the class representative, predominance and the like are not compromised by the resolution of those issues in a case brought by another person with whom he or she has no relationship.  By contrast, a ruling that a law firm found to be inadequate by one court to represent a class can, particularly without any change in circumstances, still assume control of that same class and make decisions on its behalf by the simple expedient of repeatedly locating new named plaintiffs and filing lawsuits in new forums until it found a forum receptive to its arguments regarding adequacy would not respect the due process rights of absent class members.  It would undermine both the interests of the absent class members as well as the interest that the judicial system and all parties have in finality.  A court has already found that the Troy Law Firm is inadequate to represent Flushing Restaurant employees.  There is no reason to believe that the interests of the absent class members will be furthered by giving that firm a second chance.  In addition, the judicial system and Defendants also deserve finality at least with respect to the fully litigated issue of that firm's adequacy with respect to this class.  A contrary ruling would disserve the interests of these

parties, as well as parties to class actions going forward.  The justice system benefits when defense counsel identifies the inadequacy of counsel to represent its adversary; the court may not have the information in its possession to ask the questions necessary to ensure that the due process rights of persons not before the court are protected.  If the only consequence of an investigation of those issues is that the lawyer would continuously restart the litigation, albeit in an entirely new jurisdiction, litigating the same issues regarding its adequacy over again, few would make the investment.  The judicial system and the absent class members would ultimately be the losers.  Rule 23 is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Wal-Mart*, 564 U.S. at 348 (quoting *Califano v. Yamasaki*, 442 U.S. 682 (1979)).  If the case is valuable enough and has the promise of satisfying Rule 23, presumably new counsel will step forward to serve as class counsel.  If she or he does not, Rule 23 itself teaches that the prospect of potentially receiving relief on a collective basis is outweighed by the compromise of due process rights when absent class members will be bound and precluded by the conduct and decisions of inadequate counsel.

Moreover, even if the *Jin* ruling were not issue preclusive on the adequacy of the Troy Law Firm's representation of this class, the Court would find as an original matter that the firm is not adequate.  As a simple matter of comity, Judge Ross's decision is entitled to some weight. *See Baker v. Microsoft Corp.*, 797 F.3d 607, 619 (9th Cir. 2015) (Bea, J., concurring) (stating that earlier decision should be entitled to rebuttable presumption of correctness); *McCabe v. Lifetime Entertainment Serves., LLC*, 2018 WL 1521860, at *16 (E.D.N.Y. Jan. 4, 2018) ("Even if Judge Hellerstein's decision on class certification was not issue preclusive, it would be entitled to comity since it is from a District Judge in the same circuit resolving the same class issues." (citing cases)).  It is also entitled to be considered as "any other matter pertinent to counsel's

ability to fairly and adequately represent the interests of the class," Fed. R. Civ. P. 23(g)(1)(B), in that a finding that counsel has not fairly and adequately represented the interests of a nearly identical class suggests that it will not do so in the future.

Independent from the weight this Court affords Judge Ross's opinion, the other Rule 23(g) factors counsel against a finding that the Troy Law Firm would fairly and adequately represent the interests of the class. In the instant case, even after Judge Ross found it to be inadequate, the Troy Law Firm work's in "investigating potential claims in the action," the resources it had devoted to representing the class, and the work it has done in representing persons who are members of the putative class it has sought to represent all confirm the wisdom of her ruling. The Troy Law Firm has not acted as an adequate fiduciary for members of the putative class. Five individuals who were, before they were dismissed, members of the putative class the Troy Law Firm seeks to represent, have had to be sanctioned for their conduct in the litigation. After it named them as plaintiffs, the Troy Law Firm itself has been sanctioned for their failure to attend depositions and the Troy Law Firm's inability to justify the non-attendance. Dkt. No. 109. Two of the individuals whom it named as plaintiffs failed to attend their own depositions and failed to timely move for a protective order or to dismiss their own claims, resulting in sanctions and the dismissal of their claims. Dkt. Nos. 116, 158. Three other individuals whom it named as plaintiffs—including two of the current Named Plaintiffs, Lu and Zhai—failed to appear for depositions and failed to move for a protective order *before* the scheduled deposition, resulting in another award of sanctions. *See Huer Huang*, 2020 WL 5849099, at *3–4. There is no reason to believe the Troy Law Firm would provide more adequate representation for those members of the class who have not appeared and whose identity has not been revealed to the Troy Law Firm. Indeed, the Troy Law Firm has shown no

fidelity to those absent class members.  It failed to engage in any discovery to develop an

evidentiary record upon which the Court could have found the existence of the Rule 23(a) and

Rule 23(b)(3) factors, conduct it should have engaged in if it believed the absent class members

had claims that should be pursued and was interested in them being able to assert their rights.  As

to the Midtown Restaurant employees, it did not take the basic step of trying to determine how

many persons would have fallen within the proposed class.  It is for that reason, among others,

that the Court finds that the Troy Law Firm has not satisfied its burden of proof and a class

cannot not be certified.  And as to the Flushing Restaurant subclass, it is mere happenstance that

the Troy Law Firm has been able to submit a record that shows that the numerosity requirement

has been met.  It is not because of any discovery the Troy Law Firm engaged in in support of this

motion.  Rather, it is because the Court had previously conditionally certified a FLSA collective,

which gave rise to the production of the list the Troy Law Firm submitted in support of this

motion—a list that the Court once again notes did not even contain the support the Troy Law

Firm represented that it did in terms of the relevant number of employees.

Finally, the only evidence that Plaintiffs submitted in support of the adequacy of class

counsel was the affirmation of the principal of Troy Law, PLLC, John Troy, stating that he has

been litigating wage and hour cases since 2009.  Dkt. No. 174.  But that evidence is undermined

by the experience the affirmation omits.  Courts in this District have recognized that the Troy

Law Firm "has consistently demonstrated its inadequacy as class counsel in several previous

cases, in which it has been sanctioned or reprimanded for its inability to represent class plaintiffs

zealously and competently in other FLSA and NYLL cases."  *Shi Ming Chen v. A Taste of Mao,*

*Inc.*, 2021 WL 3727093, at *1 (S.D.N.Y. Aug. 20, 2021).  For example, in addition to its

inadequate representation in the *Jin* case, the firm has "failed to timely and diligently pursue a

motion to amend the complaint to add multiple defendants, which resulted in a denial of
[p]laintiffs' request to amend," *id.*, has "shown a tendency towards prejudicial neglect of its
clients' interests," *Rodpracha v. Pngsri Thai Rest. Corp.*, 2021 WL 1733515, at *2 (S.D.N.Y.
Mar. 22, 2021), and has had sanctions imposed on it and a case dismissed for failure to prosecute
for its "repeated failure to comply with deadlines," *Guo v. A Canaan Sushi Inc.*, 2019 WL
1507900, at *4 (S.D.N.Y. Apr. 5, 2019).  That is not to say that past findings of inadequacy or
sanctionable conduct in other cases would necessarily render the Troy Law Firm unfit to serve as
a class representative in any action that it brings if a proper showing were made.  But it
demonstrates that, even leaving aside the principles of preclusion, the evidence submitted is
insufficient to satisfy Plaintiff's burden of proof that the class would be served by permitting the
Troy Law Firm to represent it.

Finally, and as an independent basis of the Court's decision, there also is no adequate
class representative to monitor counsel and to protect the interests of the proposed class.  There
are four potential class representatives among the group of Flushing Restaurant employees who
worked in the kitchen—Cruz, Xu, Maximino, and Cheng.[11]  Plaintiffs do not separately discuss
the adequacy of any of those individuals as class representatives.  Plaintiffs' memorandum in
support of the motion for class certification asserts, without citation to any evidence, that the
Named Plaintiffs "are prepared to protect the interests of all class members."  Dkt. No. 175 at
12.[12]  Counsel has submitted declarations from the four.  They contain the blanket statement:  "I

---

[11] While Saldivia, who was a busboy, may have performed some work in the kitchen, there is
evidence that, as a busboy, he would have been considered a member of the dining room staff
and would have thus been subject to different employment conditions than those faced by the
kitchen workers; his claims are not typical of their claims.  *See* Dkt. No. 183 ¶¶ 10–11
(describing the differences between management and working conditions of the kitchen staff and
the dining room staff).
[12] It also asserts that the Named Plaintiffs do not have interests antagonistic to the members of

sincerely hope that this Court allows me to represent the interests of my co-workers in this action.  These Defendants exploited me and my co-workers, and it is my hope that we will be permitted to recover wages that we are owed." Dkt. No. 174-3 ¶ 61 (Cruz); Dkt. No. 174-9 ¶ 180 (Maximino); Dkt. No. 174-4 ¶ 16 (Xu); Dkt. No. 174-16 ¶ 84 (Cheng).  They do not contain any information that would suggest that any of the four has been actively involved in the litigation, that they are knowledgeable about the proposed class action, or that they would be capable as fiduciaries to act on behalf of members of the class.   Perhaps a record could have been created that one or more of these individuals would be adequate to represent the class.  The Troy Law Firm did not create or present that record.

There also are substantial questions with respect to commonality, typicality, and predominance.  Each of Cruz, Xu, Maximino, and Cheng filled out declarations stating that they worked in excess of forty hours a week and were paid a flat rate for their time without being paid time and one half for hours in excess of forty.  They each stated that they did not know that they were entitled to be paid and were paid on the basis of an hourly rate and did not receive notices of their pay.  However, documents submitted in connection with the motion for class certification demonstrate that the pay records showed that they were being paid on an hourly basis and received overtime pay and notice of their pay.  It may be that in occasional instances a worker did not receive overtime, but on the basis of the record before it, the Court cannot determine by a preponderance of the evidence that there was a common policy in violation of the New York Labor Laws that affected each of the kitchen workers.

In the end, however, the Court need not base its decision on commonality, typicality and predominance.  Plaintiffs have failed to satisfy the adequacy prong with respect to the Flushing

---

the proposed class.  *Id.*

Restaurant employees and have failed to demonstrate numerosity or adequacy with respect to the Midtown Restaurant employees.

## CONCLUSION

The motion for class certification is DENIED.

The Clerk of Court is respectfully directed to close Dkt. No. 173.


SO ORDERED.

Dated: May 10, 2022
     New York, New York

                                 LEWIS J. LIMAN
                         United States District Judge